The STATE of Ohio, Appellant,

v.

MESLEY, Appellee.

[Cite as *State v. Mesley* (1999), 134 Ohio App.3d 833.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–99–1035.

Decided Sept. 30, 1999.

834

*Julia R. Bates*, Lucas County Prosecuting Attorney, and *Timothy A. Westrick*, Assistant Prosecuting Attorney, for appellant.

*Ronnie L. Wingate*, for appellee.

SHERCK, Judge.

This case involves the state's appeal of a drug suppression order issued by the Lucas County Court of Common Pleas. Because police did not have a reason-

able, articulable suspicion of criminal activity to intrude upon a parked vehicle in which appellee was a passenger, we affirm the trial court's decision to suppress.

On April 24, 1998, Toledo police had appellee, Marvin Mesley, under surveillance at a strip mall. When they approached the vehicle where appellee was sitting in the passenger's seat, they saw a bag of narcotic pills in appellee's lap and arrested him. Appellee was indicted for aggravated possession of drugs, a violation of R.C. 2925.11(A) and (C)(1)(b), and a third degree felony.

At a suppression hearing conducted on December 22, 1998, Detective Kynard testified that she had arranged for the surveillance at the strip mall as part of an ongoing drug investigation. She acknowledged that she knew that appellee's wife owned a beauty salon in the strip mall.

Kynard, the lead detective for the investigation, relied on information from an unknown source to establish the surveillance. The state presented no testimony regarding the details of the source or contents of the information. The defense, however, recalled the lead detective for the purpose of identifying the general nature of the source.

In addition to the lead detective, three other detectives (in two unmarked police cars) were watching the parking area. The lead detective instructed the other three "to keep an eye on a vehicle that was parked in the parking lot by Big Mama's." Big Mama's was a restaurant in the strip mall. Because of their locations, some of the detectives' views were obstructed at different times. All of the detectives were, however, in radio contact with each other. The record did not show how long the detectives had the area under surveillance.

Around five or six o'clock in the evening, while it was still daylight, one detective testified he saw appellee sitting in the parking lot for approximately five or ten minutes. The detective then saw appellee drive a red van through the parking lot toward an exit onto a major street. As appellee was about to drive out of the parking lot, a blue van drove into the parking lot. Appellee put his van in reverse and backed up to the rear of the parking lot. The blue van parked in the same area. Appellee got out of his red van and entered the passenger side of the blue van.

All of the detectives testified that they did not see appellee commit any traffic violation or criminal act. The lead detective testified that, although there was nothing criminal regarding vehicles parking at the back of the lot, it was unusual and she had a hunch that something was going on.

Detective Kynard instructed the officers in the other two cars to approach the vans to determine whether there was contraband or drug activity. Detective Kynard acknowledged that she intended that both occupants in the blue van would be detained. One of the other detectives testified that he intended to

detain both individuals for the investigation, which, if necessary, would have included a stop, a pat-down search, and a vehicle search.

One detective pulled his vehicle to the passenger side of the blue van at an angle. That detective testified that the van was partially blocked and would have to maneuver to get around his vehicle. One of the detectives in another car also pulled in at an angle, which blocked both vans so that they could not move readily. That detective acknowledged that he had his gun drawn.

Two detectives approached the passenger's side of the blue van. A third detective, Woodson, approached the driver's side of the van and "pulled the driver out of the vehicle." Detective Kynard could not get through traffic and was not on the scene immediately.

When the two detectives approached the side window on the passenger's side, they saw a plastic bag containing pills on appellee's lap, which they identified as the controlled substance Dilaudid. Noticing the officers, appellee brushed the bag to the floor. The officers then removed appellee from the van and arrested him.

The trial court suppressed the drugs seized. First, the trial court determined that appellee had standing to challenge the seizure of the pills from his person while he was in another's vehicle. Next, the trial court determined that the police lacked a reasonable, articulable suspicion that criminal activity was in progress when their actions were based solely on a tip combined with observation of individuals parking their vans in the back of a strip mall parking lot where appellee's wife worked. The trial court rejected appellant's arguments that the pills were seized while in plain view because, without reasonable suspicion, the initial intrusion by the officers was unlawful.

Appellant raises the following assignment of error:

"The trial court erred in granting appellee's motion to suppress."

Appellant has presented the following distinct and separate subarguments in support of its assignment of error:

"1. There is no expectation of privacy in a public parking lot, and, therefore, no Fourth Amendment Intrusion.

"2. The search and seizure involved in this case was valid and constitutional under the plain view exception to the warrant requirement.

"3. Prior to the plain view observations of the drugs, there was no seizure or detention of the vehicle in which appellee was a passenger.

"4. Appellee does not have standing to contest the search and seizure."

I

Appellant contends that evidence seized in "plain view" from a passenger in an automobile parked in a commercial parking lot cannot be suppressed because (1) the Fourth Amendment does not protect automobiles in public parking lots, (2) the contraband was discovered in "plain view" during a valid police intrusion, and (3) a motor vehicle passenger does not have standing to challenge the seizure of evidence.

 The Fourth Amendment protects against unreasonable government intrusions, whether a search or a seizure, into areas of recognized privacy expectations. *United States v. Chadwick* (1977), 433 U.S. 1, 11, 97 S.Ct. 2476, 2483–2484, 53 L.Ed.2d 538, 548. "[W]arrantless searches are *'per se* unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions.'" *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 376, 373 N.E.2d 1252, 1255. Warrants may not be required if the interest is not protected by the Fourth Amendment or if a recognized exception applies. If the Fourth Amendment does not protect an area or item, it is not necessary to determine whether an exception applies. For example, there is no recognized privacy expectation in an open field outside a residence. See *Oliver v. United States* (1984), 466 U.S. 170, 180–181, 104 S.Ct. 1735, 1742–1743, 80 L.Ed.2d 214, 225–226. Police do not need a warrant, or an exception, to search for or seize marijuana plants or a still found in an open field, or a weapon found on a street, under what is termed the "open view" doctrine. See *id.; Hester v. United States* (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898. In such cases, there is no search because the police can observe the item without a prior physical intrusion into a constitutionally protected area. *State v. Harris* (1994), 98 Ohio App.3d 543, 547, 649 N.E.2d 7, 9–10, quoting 1 LaFave, Search and Seizure (2d Ed. 1987) 321–322, Section 2.2(a).

" ' "This includes the case in which an officer discovers an object which has been left in an 'open field' or similar nonprotected area, and also those cases in which an officer—again, without making a prior physical intrusion—sees an object on the person of an individual, within premises, or within a vehicle. In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement." ' " (Emphasis deleted.) *Id.*

 In its first subargument, appellant contends that the Fourth Amendment does not protect evidence located inside an occupied vehicle parked in a public parking lot. Appellant suggests that because the interior of the vehicle is visible

to any person or police officer passing by without making a prior physical intrusion into a constitutionally protected area, there is no expectation of privacy. See *Harris*, 98 Ohio App.3d 543, 649 N.E.2d 7.

While the expectation of privacy in automobiles may be diluted, people do not abandon all privacy expectations when occupying parked vehicles in a public parking lot on business premises. The cases cited by appellant demonstrate that law enforcement officers had reasonable suspicion to investigate a parked vehicle before they discovered evidence in "plain view," or, prior to making a decision to investigate a particular individual, discovered evidence in "open view" within a vehicle. See *State v. Snyder* (Aug. 25, 1995), Wood App. No. WD–94–098, unreported, 1995 WL 504758; *State v. Harris*. Here, the discovery of a bag of Dilaudid in appellee's lap in "open view" did not trigger the officers' investigation.

Consequently, we reject appellant's first subargument.

## II

In its second subargument, appellant maintains that even if the Fourth Amendment applied to this situation, the plain view exception allows the use of the contraband seized from appellee's lap. In its third subargument, appellant suggests that the police did not seize or detain the blue van. We will consolidate those two arguments because both concern whether the police were justified in their intrusion upon the van.

An exception to the warrant requirement is the "plain view" doctrine. See *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 607–608; see *State v. Bunch* (Mar. 31, 1998), Lucas App. No. L–97–1229, unreported, 1998 WL 161175. Under the "plain view" exception, police do not need a search warrant to seize incriminating evidence which they discovered in plain view during an initial lawful intrusion. *Horton v. California* (1990), 496 U.S. 128, 136, 110 S.Ct. 2301, 2307–2308, 110 L.Ed.2d 112, 122–123; see *State v. Williams* (1978), 55 Ohio St.2d 82, 84, 9 O.O.3d 81, 82, 377 N.E.2d 1013, 1015. To seize evidence under the plain view exception, the state must show that (1) the initial intrusion which afforded authorities a plain view of the evidence was lawful, and (2) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *Horton v. California*; *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819, 833. In short, the plain view exception allows law enforcement officers to seize incriminating evidence or contraband when it is discovered in a place where the officers have a right to be. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

A police officer may seize contraband in plain view inside a vehicle when the officer has a lawful reason to stop or investigate an automobile. *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. The automobile

exception to the warrant requirement allows police who have probable cause to believe that evidence of a crime will be found in a vehicle to conduct a warrantless search of it, including containers which may hold the evidence subject to seizure. *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572; *State v. Mills* (1992), 62 Ohio St.3d 357, 367, 582 N.E.2d 972, 982–983. In this case, appellant has never suggested that the Dilaudid was admissible because police had probable cause to "stop and search" the blue van.

To approach the van in order to see the Dilaudid in "plain view," the officers needed some other lawful reason under the Fourth Amendment. According to the detectives' forthright testimony at the suppression hearing, their sole reason was to implement a stop under the auspices of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Police officers may not randomly stop vehicles any more than they can randomly stop pedestrians. Other than well-defined exceptions, such as check points, police must have a reasonable, articulable suspicion of criminal activity to stop and investigate a pedestrian or a vehicle. See *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607.

The detectives candidly testified, however, that the decision to approach the blue van in which appellee was a passenger was nothing more than a "hunch" or "general suspicion" that evidence of drug activity might be found. No testimony was presented regarding the details of the anonymous source leading to the surveillance that might arguably make a hunch reasonable and articulable. As a result, the trial court correctly concluded that the initial intrusion that afforded the police the plain view of the Dilaudid was unlawful. Therefore, the trial court properly suppressed that evidence.

In its third subargument, appellant has attempted to avoid that result by suggesting that the police did not "detain" or seize the blue van because it was already "stopped." Appellant further suggests that even though the detectives parked their cars to block the van and one officer admitted to having his gun drawn as he approached the van, this was not a seizure.

What constitutes a *Terry* stop does not focus on what is physically done to tangible property. A reasonable person is seized for an investigatory *Terry* detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, one would have believed that he or she was not free to leave. See *State v. Taylor* (1995), 106 Ohio App.3d 741, 747–748, 667 N.E.2d 60, 64–65.

In our view, the trial court correctly concluded that the detectives did not have a reasonable, articulable suspicion to execute a seizure of appellee for a *Terry* stop. Accordingly, the detectives did not lawfully intrude upon appellee. Appellant's second and third subarguments are not meritorious.

## III

In its final subargument, appellant argues that appellee did not have standing to challenge the seizure of evidence from someone else's van. According to appellant, "it is the view of the State that it is the alleged seizure of the vehicle which is important in this case."

A passenger in a vehicle may establish standing based upon a violation of the passenger's own protected privacy interest. Such a passenger has standing to challenge the legality of a stop of a vehicle because it is a seizure of his person inside the vehicle. *State v. Carter* (1994), 69 Ohio St.3d 57, 63, 630 N.E.2d 355, 360–361. That is precisely what appellee argued and that is precisely what the trial court determined.

Despite appellant's view to the contrary, the law recognizes that appellee had standing to argue that the detective's efforts to conduct a *Terry* stop without reasonable and articulable suspicion constituted an unlawful seizure of his person, despite the fact that he was located in another's vehicle.

Accordingly, appellant's sole assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed. Costs are assessed to appellant.

*Judgment affirmed.*

KNEPPER and PIETRYKOWSKI, JJ., concur.