OPINION
Defendant-appellant Brian Pinion appeals from the June 7, 2001, Judgment Entry of the Licking County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On February 2, 2001, the Licking County Grand Jury indicted appellant on one count of aggravated possession of drugs (Oxycodone) in violation of R.C. 2925.11(A)(C)(1)(b), a felony of the third degree, and one count of possession of marijuana in violation of R.C. 2925.11(A)(C)(3)(a), a minor misdemeanor. At his arraignment on February 12, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
Subsequently, appellant filed a Motion to Suppress Evidence on March 15, 2001, arguing that pills and marijuana seized from his home were obtained in violation of his constitutional right to be free from unreasonable searches and seizure. After a brief in opposition to appellant's motion was filed on April 6, 2001, an oral hearing on the same was held on April 27, 2001. The following testimony was adduced at the April 27, 2001 hearing.
On January 22, 2001, Patrolmen Minton and Wells of the Newark Police Department responded to a dispatch call regarding a domestic situation at appellant's address. Patrolmen Wells and Minton went up to the second story of the apartment building in which appellant resided and knocked on appellant's door. After initially peeking through the blinds, appellant opened the door to the apartment. When appellant opened the door, he was "very nervous" and appeared to be "trying on purpose to block the doorway" so that the officers could not see into the apartment. Transcript of Suppression Hearing at 8, 9. Once the officers informed appellant that they wanted to speak with appellant's girlfriend or wife and make sure that she was okay, appellant stepped away from the door and allowed the officers to enter the apartment.
Immediately after letting the officers into the apartment, appellant headed straight for the dining room with Patrolman Minton following closely behind him. While walking to the dining room table, appellant walked past a shotgun laying in the corner of the dining room that was on the other side of the table. As appellant was walking towards the dining room table, Patrolman Minton asked him to sit down. However, appellant ignored the Patrolman and continued walking. A second request to sit down also was ignored by appellant.
When appellant reached the dining room table, he reached down and picked up a translucent Tupperware container. When Patrolman Minton scanned the table for weapons, he also observed an unlabeled prescription bottle containing some pills. As appellant picked up the Tupperware container and went to place the lid on it, Patrolman Minton "could hear what sounded to me like scales sliding around in it." Transcript of Suppression Hearing at 12. Patrolman Minton also could see several layers of baggies filled with pills in the container. In addition, Patrolman Wells observed pills and marijuana roaches laying on the dining room table.
After securing the lid on the Tupperware container, appellant immediately went into the kitchen with Patrolman Minton following behind. Appellant then placed the container in a kitchen cabinet and started to exit the kitchen. After Patrolman Wells instructed appellant several times to sit down, appellant finally sat down. Patrolman Minton then reached into the kitchen cabinet and took out the container which, he advised Patrolman Wells, contained drugs.
After unloading the shotgun, Patrolman Minton spoke with appellant's wife or girlfriend, who told him that the pills had been prescribed by appellant's doctor. However, when asked, she did not know the doctor's name. Appellant, when questioned after the Tupperware container was opened, told Patrolman Minton that he was hooked on pain pills and that he had bought the pills "off of the street". Transcript of Suppression Hearing at 19. Appellant was then arrested and taken to the police station. The 68 pills seized were found to be Oxycodone.
Following the oral hearing, the trial court, as memorialized in a Judgment Entry filed on May 8, 2001, denied appellant's Motion to Suppress, finding that the officers had plain view of the pills and marijuana. A jury trial was then held on June 7, 2001. On the same day, the jury returned with a verdict finding appellant guilty of aggravated possession of drugs. The jury further found that the amount of Oxycodone involved was an amount equal to or exceeding five times the maximum daily dose. In addition, the trial court found appellant guilty of the charge of possession of marijuana[1]. Pursuant to a Judgment Entry filed on June 7, 2001, appellant was sentenced to one year in prison and fined $7,500.00 on the offense of aggravated possession of drugs. On the charge of possession of marijuana, appellant was fined $100.00.
It is from the trial court's June 7, 2001, Judgment Entry that appellant prosecutes his appeal, raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 II. THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO ESTABLISH THAT THE "PILLS" POSSESSED BY THE DEFENDANT-APPELLANT WERE A SCHEDULE TWO NARCOTIC AND, THUS, FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION HEREIN.
 III. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
 I
Appellant, in his first assignment of error, argues that the trial court erred in denying his Motion to Suppress Evidence. Appellant specifically contends that the trial court erred in holding that the Oxycodone pills were in "plain view" and, therefore, fit within an exception to the Fourth Amendment's warrant requirement.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982)1 Ohio St.3d 19, State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623,627, and Guysinger, supra. As the United States Supreme Court held inOrnelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
The trial court, in the case sub judice, denied appellant's Motion to Suppress after finding that the officers "had plain view of . . . . the illegal pills."[2] In order for the seizure of the Oxycodone pills to qualify under the "plain view" doctrine, the record must show that the initial intrusion leading to the items discovery was lawful and that it was `immediately apparent' that the items were incriminating to the seizing authorities. State v. Mesley (1999), 134 Ohio App.3d 833, 839, citing Horton v. California (1990), 496 U.S. 128, 136.
Appellant does not dispute that the officers' initial intrusion into appellant's apartment was constitutionally permissible.[3] However, appellant does challenge the trial court's finding that the incriminating nature of the Tupperware container and its contents was "immediately apparent" to the officers. This requirement is met when "police have probable cause to associate an object with criminal activity," State v.Halczyszak (1986), 25 Ohio St.3d 301, paragraph three of the syllabus. "[S]uch probable cause to associate an object with criminal activity as is obvious and evident to an ordinary police officer sufficiently satisfies the immediately apparent requirement" of the plain view doctrine. Id. at 305.
While appellee argues that the incriminating nature of the evidence was immediately apparent since it was reasonable for Patrolman Minton, after seeing an unlabeled medicine bottle containing pills and unmarked bags of pills in a Tupperware container, to conclude that there was a drug violation, we do not concur. There is nothing in the record to indicate that the officers, who were at appellant's residence in response to a domestic situation, had any reason to suspect that the pills were illegal contraband as opposed to aspirin or another legal substance. Furthermore, as appellee notes in his brief, "[t]here was nothing in the nature of the [Tupperware] container itself that would lead a reasonable officer to suspect that the pills were contraband." Many people carry aspirin, vitamins or other legal over-the-counter drugs in unlabeled medicine bottles or in plastic bags or containers. We find, therefore, that the "plain view" exception to the warrant requirement is not applicable since the incriminating nature of the Tupperware container and its contents was not immediately apparent.
Appellant's first assignment of error is, therefore, sustained.
 II, III
Appellant, in his second assignment of error, contends that his conviction for aggravated possession of drugs in violation of R.C.2925.11(A)(C)(1)(b) is not supported by sufficient evidence since appellee failed to introduce evidence that the Oxycodone is a Schedule II Controlled Substance. In his third assignment of error, appellant maintains that he was denied the effective assistance of trial counsel by trial counsel's failure to bring to the trial court's attention such insufficiency of evidence.
At the trial in this matter, Detective Timothy Elliget testified on direct examination that the pills possessed by appellant contained Oxycodone and that Oxycodone is a Schedule II Controlled Substance. Moreover, at the oral argument in this matter, counsel for appellant stipulated that Detective Elliget testified to such effect.
Appellant's second and third assignments of error are, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is reversed as to appellant's conviction for aggravated possession of drugs only and this matter is remanded to the trial court for further proceedings.
Costs to appellee.
Hon. Julie Edwards, P.J. Hon. William Hoffman, J. concurs. Hon. Sheila Farmer, J. dissents.
[1] Since it is a minor misdemeanor, the charge of possession of marijuana was not presented to the jury, but rather heard and decided by the trial court.
[2] Appellant is not challenging his conviction for possession of marijuana.
[3] Appellant, in his brief, notes that "[t]he officers had been dispatched to an active `domestic' situation, found evidence upon their arrival that a phone had been broken and thrown from the residence, met an occupant that acted nervous and informed them that another person was in the residence, but was not visible to the officers."