DECISION AND JUDGMENT ENTRY
{¶ 1} This case is an appeal from a judgment of the Lucas County Common Pleas Court that denied appellant's motion to suppress.
 {¶ 2} On June 24, 2004, appellant Ricardo Rivera was indicted for possession of cocaine, a felony of the second degree in violation of R.C. 2925.11(A) and (C)(4)(d), and for trafficking in cocaine, a felony of the first degree in violation of R.C.2925.03(A)(2) and (C)(4)(e). On July 21, 2004, appellant pled not guilty to both counts of the indictment and filed a motion to suppress.
 {¶ 3} A confidential informant provided the tip that led to appellant's arrest on April 7, 2004. Prior to appellant's arrest, Toledo police detective, Michael Awls, received information from the informant, Trevor Pacquin. Pacquin named appellant as his cocaine supplier. Police obtained a booking photo of appellant which the informant positively identified. Police did not seek a warrant for appellant's arrest. The booking photo was from a traffic violation.
 {¶ 4} Following this initial contact between Pacquin and Awls, police met or spoke with Pacquin three or four times to arrange a drug purchase from appellant, and to plan a surveillance operation of the site of the transaction. Pacquin told police that between 5:30 and 6:00 p.m. on April 7, at a parking lot of a certain strip mall, appellant would deliver half a kilo of powder cocaine to him. The informant said appellant might be driving a white Bonneville.
 {¶ 5} Awls testified that Pacquin had been arrested but not prosecuted for possession of cocaine, that he had become an informant several days before appellant's arrest, and that he agreed "to do a supplier." Prior to the tip about appellant, Pacquin had never provided police with information leading to an arrest. Police did not run a report to verify the kind of car appellant drove, or tape or listen to conversations between Pacquin and appellant to corroborate Pacquin's information. Beside the present conviction, appellant has no record of drug related offenses.
 {¶ 6} At 5:00 p.m. on April 7, surveillance of the parking lot was in place with about 10 police officers positioned in or around the parking lot in unmarked cars. At 5:40, Pacquin, who was parked in the strip mall parking lot, called Awls, who was stationed in his car across the street. Pacuin told Awls that appellant was en route. At 5:45, appellant, who was driving a maroon Dodge Intrepid, entered the parking lot and parked one space over from the informant. With appellant were his girlfriend and two young sons. Police recognized appellant from the booking photo.
 {¶ 7} Awls did not see appellant commit any criminal activity or traffic violation, but ordered his men to approach as soon as appellant parked. Without exiting his car, appellant opened his car door. Detective John Greenwood testified that, at this point, he observed appellant holding a black satchel. As officers approached appellant with their guns drawn, numerous vehicles swarmed appellant's car. Appellant, who was still seated in his car, dropped the satchel onto the floor of his car.
 {¶ 8} Greenwood testified that Sergeant Marzec ordered appellant out of his car, and that Greenwood "trapped" appellant, whereupon Greenwood and several detectives pulled appellant from his car and secured appellant on the ground. Greenwood, believing the satchel might contain a weapon, retrieved the satchel from inside appellant's car and placed it on top of the car. The satchel was beyond the reach of appellant's girlfriend who was seated in appellant's car. Greenwood then searched inside the satchel and found it contained 496 grams of powder cocaine. Detectives then formally placed appellant and his girlfriend under arrest.
 {¶ 9} On August 6, 2004, appellant filed a motion to suppress evidence, arguing that the search and seizure pursuant to his arrest was unlawful. The only witnesses who testified were those of the state. At the suppression hearing, Awls testified that he had found Pacquin credible and his information reliable because the informant: 1) gave him appellant's name; 2) identified appellant from the booking photo; 3) told police he had purchased cocaine from appellant for several months; and, 4) accurately informed police that appellant was en route to the parking lot.
 {¶ 10} The trial court denied appellant's motion, finding that the search did not violate appellant's right against illegal searches and seizures because there existed probable cause for the search and seizure, and that police had "more than a reasonable suspicion" that appellant was involved in criminal activity.
 {¶ 11} Following the denial of appellant's motion to suppress, appellant withdrew his previous plea of not guilty and pled guilty to the charge of cocaine possession. The court found appellant guilty and sentenced him to two years in a state correctional facility.
 {¶ 12} Appellant now appeals that judgment, setting forth one assignment of error:
 {¶ 13} "THE TRIAL COURT ERRED IN DENYING THE DEFENDANTA-PPELLANT'S MOTION TO SUPPRESS."
 I. {¶ 14} Appellant argues that the United States and Ohio Constitutions protect citizens from unreasonable searches and seizures, and that, although unwarranted searches are per se unreasonable subject to a few exceptions, no exception was applicable to justify the search of appellant's satchel. Appellant asserts that police lacked the requisite probable cause to lawfully arrest and search him, and further, that the police lacked a reasonable articulable suspicion that criminal activity was afoot to justify their approaching and detaining appellant. Accordingly, appellant argues that his search and seizure was unreasonable, and that evidence seized by police should not have been admissible against him.
 {¶ 15} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v. Mills (1992),62 Ohio St.3d 357, 366. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. Accepting the facts as found by the trial court as true, the appellate court must independently determine as a matter of law, without deferring to the trial court's conclusions, whether the facts meet the applicable legal standard. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 16} Any time a police officer, by show of force or authority, restrains the liberty of a citizen, there is a "seizure" governed by a constitutional standard of reasonableness. Terry v. Ohio (1968), 392 U.S. 1, 16-19. All evidence obtained by searches and seizures in violation of the Fourth Amendment guarantee against unreasonable state intrusion is inadmissible in a state court. Mapp v. Ohio (1961),367 U.S. 643, 655.
 {¶ 17} When a police officer has a reasonable, articulable suspicion of criminal activity, he may, without a warrant, detain a suspect in a brief investigatory stop, even absent probable cause. Terry v. Ohio (1968), 392 U.S. 1, 22; State v. Godwin,
6th Dist. No. WD-04-094, 2005-Ohio-3204, at ¶ 11 ("An investigatory stop is the motorized equivalent of a `Terry' stop * * *."). To justify an investigatory stop, an officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry, 392 U.S. 1, 21; State v.Williams (1990), 51 Ohio St.3d 58, 60 (citing Terry, supra at 21).
 {¶ 18} The police officer making an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or hunch" that something is wrong.Terry, 392 U.S. 1, 27; Alabama v. White (1990), 496 U.S. 325,329 (citing Terry, supra at 27). An officer's intuition, even if ultimately confirmed, will not provide a constitutional basis for an investigatory stop. State v. Mesley (1999),134 Ohio App.3d 833, 840.
 {¶ 19} Whether an informant's tip can create reasonable, articulable suspicion is assessed by the informant's veracity, reliability and basis of knowledge. Alabama v. White,496 U.S. 325, 328-329. Thus, when an investigatory stop "stems solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip * * *. The appropriate analysis, then, is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." City of Maumee v. Weisner (1999),87 Ohio St.3d 295, 299.
 {¶ 20} Where the source of a tip is a confidential informant from the criminal milieu, courts are more concerned with establishing an informant's veracity than when the source of the information is an average identified citizen. Id. at 300 (citingEaston v. Boulder (C.A.10, 1985), 776 F.2d 1441, 1449). A confidential informant may be more likely than an identified citizen-informant to have a bad motive in giving police a tip, a factor relevant to veracity. State v. Shepherd (1997),122 Ohio App.3d 358, 366-367 (Because the informant was a "criminal suspect under police detention, with every incentive to point [police] in another direction, [the informant's] information should have been regarded with the highest scrutiny.").
 {¶ 21} When an informant's tip lacks sufficient indicia of reliability to create a reasonable suspicion of criminal activity, but police fail to investigate or corroborate the reliability of an informant, the informant's tip will not justify an investigatory stop. Adams v. Williams (1972), 407 U.S. 143,147.
 {¶ 22} Independent corroboration by police of significant aspects of an informant's predictions about a suspect's behavior, particularly where such facts would not ordinarily be easily predicted, can impart some degree of reliability to the criminal activities alleged by an informant. Alabama v. White,496 U.S. 325, 331-332. Where an anonymous informant accurately informed police that a woman would be leaving a particular address at a particular time and in a particular car, and that she would drive to a particular destination, the Supreme Court found that, albeit a "close call," the informant's capacity to predict the suspect's future behavior, particularly the route the suspect took, was sufficient to assess the informant as sufficiently honest and well-informed. Id.
 {¶ 23} We, however, upheld a trial court's suppression of evidence where the basis for police intrusion upon a parked vehicle was an anonymous tip that a drug transaction would occur combined with police observation of appellee's showing up at the site where police had established surveillance based upon the tip. State v. Mesley (1999), 134 Ohio App.3d 833, 840. We held that the discovery of drugs in open view inside appellee's vehicle did not trigger the officers' initial intrusion where no "testimony was presented regarding the details of the anonymous source leading to the surveillance that might arguably change a hunch to `reasonable, articulable' test." Id.
 {¶ 24} We note that one exception to the Fourth Amendment's prohibition against warrantless searches is a limited protective search for concealed weapons conducted within the scope of a justified investigatory stop. State v. Bobo (1988),37 Ohio St.3d 177, 180. A limited protective search occurs "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others * * *. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Id. (citing Adams v. Williams, supra at 146, citing Terry v. Ohio, supra at 24). In addition, the automobile exception permits police to conduct a warrantless search of a vehicle and containers in the vehicle if they have independent probable cause to believe there is evidence of a crime in the vehicle. U.S. v. Ross (1982), 456 U.S. 798, 809;State v. Mills (1992), 62 Ohio St.3d 357, 367.
 {¶ 25} In the present case, it is clear that appellant, approached by police at gun point and physically removed from his car, was not free to leave. Hence, this initial intrusion must be reasonable under Fourth Amendment standards.
 {¶ 26} The sole basis for the stop was the tip supplied by a confidential informant. The informant had no prior history in providing the police with information and, was himself a member of the criminal milieu. Although the police had no indicia to support the informant's veracity or the reliability of his information, the only independent investigation they conducted to corroborate his information was to have the informant positively identify appellant's photo.
 {¶ 27} Further, the informant predicted no future behavior by appellant that indicated the informant was either truthful or his information reliable. The informant's information predicted just two neutral details: that appellant drove into a public place at a certain time. The informant failed to identify the car appellant would be driving, the address from which appellant would depart, or the route appellant would take.
 {¶ 28} Likewise, no personal observations by police created a reasonable, articulable suspicion that appellant was engaged in, or about to engage in, criminal activity to justify his detention. Police had not seen appellant commit any criminal activity or traffic violation. Police had observed no exchange of drugs between appellant and the informant. Police had observed appellant merely sitting in a legally parked car when they approached him with guns drawn. Accordingly, we find police lacked a reasonable, articulable suspicion to justify an investigatory stop.
 {¶ 29} Because an investigatory stop was unjustified, police could have no reasonable, articulable suspicion that appellant or his girlfriend were armed and dangerous that would justify a limited protective search for weapons. Even if, however, the initial intrusion were a justified investigatory stop, the police could not justify a protective search when neither appellant nor his girlfriend could access the satchel, placed on top of the car by Detective Greenwood.
 {¶ 30} We conclude, therefore, that, as police lacked both a reasonable, articulable suspicion to justify an investigatory stop, and, hence, lacked probable cause to search the contents of appellant's car, appellant's search and seizure by police was not reasonable. Accordingly, we find appellant's assignment of error well-taken, and that the trial court erred in denying appellant's motion to suppress.
 {¶ 31} On consideration, the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings consistent with this judgment. The state of Ohio is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J. Skow, J. concur.
Dennis M. Parish, J., DISSENTS.