DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, wherein appellant, Ervin L. Mitchell, was found guilty of trafficking in cocaine, a violation of R.C. 2925.03(A)(2) and (C)(4)(f), a felony of the second degree. He was sentenced to a mandatory five years in prison and ordered to pay a mandatory $10,000 *Page 2 
fine. His motor vehicle operator's license was also suspended for a period of three years. Appellant claims that the following error occurred in the proceedings below:
 {¶ 2} "The trial court erred in denying the appellant's motion to suppress."
 {¶ 3} The following facts, as adduced at the hearing on appellant's motion to suppress, are salient to our disposition of appellant's sole assignment of error.
 {¶ 4} On February 15, 2006, Toledo Police Detective Michael J. Awls, who is assigned to the Metro Drug Task Force, received a call from a "confidential source," that is, a confidential informant. The informant told Detective Awls that Mitchell was selling drugs at 1300 Woodland Avenue and was driving a maroon pickup truck.
 {¶ 5} Based on this information, and from numerous past experiences in arresting Mitchell for drug offenses, Detective Awls and other members of the Metro Drug Task Force set up a surveillance of appellant on Woodland Avenue, which is known as a high crime, drug trafficking area. In the meantime, a Detective Greenwood stayed at the police station and ran a computer check on appellant's driving status and any possible outstanding warrants. When he learned that appellant driver's license was suspended, with limited driving privileges, Greenwood informed the surveillance team of this fact.
 {¶ 6} Sergeant Robert Marzec, the lead detective on the case, knew appellant because he had previously arrested him for drug trafficking. He positioned himself in an alley approximately two blocks south of appellant's truck, which was parked in the 1300 block of Woodland Avenue, where he was able to observe, through binoculars, any activity occurring around that truck. During a one-half hour period, the detective saw *Page 3 
appellant meet with one or two people who would move out of Marzec's sight. Mitchell would then appear and walk back to his truck. He would open the driver's side door of the truck, reach into the truck, close the door, and then turn and disappear out of sight again. At one point, appellant met with another individual at the opening of an alley; Marzec saw a hand-to-hand exchange between the two in which appellant received paper (as opposed to coins) money that he held up to the sunlight and examined. At the hearing on appellant's motion to suppress, Marzec testified that he believed the hand-to-hand exchange was a drug transaction and that appellant examined the money to determine whether it was counterfeit.
 {¶ 7} Shortly after the above exchange, appellant got into his truck and started to leave. Detective Marzec lost sight of the vehicle, but Detective Lori Renz pulled her unmarked vehicle in front of appellant's truck, and he was forced to stop. Mitchell climbed out of his truck and tried to flee, but he was seized by the task force captain. Appellant broke away from the captain and started to run. By that time, Detective Marzec arrived at the scene. He pursued appellant, tackled him, and placed him under arrest. According to Marzec, appellant was stopped because he had only limited/no driving privileges and for the purpose of conducting a drug investigation.
 {¶ 8} When he stepped out of his vehicle, appellant dropped an individual baggy of crack cocaine outside the door of the pickup and started to run. He continued to drop baggies of crack cocaine until he was captured by Detective Marzec. A search of appellant's truck revealed more crack cocaine. *Page 4 
 {¶ 9} Subsequently, Mitchell was indicted on (1) one count of violating R.C.2925.11(A) and (C)(4)(e), knowing possession of a controlled substance, cocaine or a substance containing cocaine, in an amount exceeding 25 grams but less than 100 grams, a felony of the first degree; (2) one count of violating R.C. 2925.03(A)(2) and (C)(4)(f), trafficking in cocaine, a felony of the first degree; and (3) one count of violating R.C. 2903.13(A) and (C)(3), assaulting a police officer during the performance of the officer's duties, a felony of the fourth degree. Appellant entered a plea of not guilty to each of the three counts of the indictment.
 {¶ 10} Mitchell filed a motion to suppress all evidence discovered by law enforcement officials as the result of the warrantless search and seizure of his person and his motor vehicle. He asserted that said search and seizure was a per se violation of the Fourth Amendment to the United States Constitution. Specifically, appellant argued that the actions of the Metro Drug Task Force on February 15, 2006, constituted an arrest-not an investigatory stop; therefore, appellee, the state of Ohio, had to demonstrate probable cause to arrest him rather than have a reasonable, articulable suspicion of criminal activity to stop him. After holding a hearing, the trial court denied the motion to suppress. In doing so, the court below determined that, under a totality of the circumstances, the law enforcement officers in this case had probable cause to arrest appellant.
 {¶ 11} Appellant then withdrew his not guilty pleas and pled no contest to Count 2 in the indictment, trafficking in cocaine. The trial court found him guilty and sentenced *Page 5 
him to a mandatory five years in prison, suspended his driver's license for a period of three years, and ordered his five year sentence to be served consecutively to a sentence imposed in another criminal case in which appellant was a defendant. Mitchell was also ordered to pay a mandatory fine of $10,000, plus fees and the costs of his confinement.
 {¶ 12} The applicable standard of review on a motion to suppress evidence presents a mixed question of law and fact to the reviewing court. State v. Long (1998), 127 Ohio App.3d 328, 332 (citations omitted). When ruling on a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given the evidence presentedState v. Johnson (2000), 137 Ohio App.3d 847, 850. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Retherford (1994),93 Ohio App.3d 586, 592.
 {¶ 13} The Fourth Amendment to the Constitution of the United States, as applied to the states through the Fourteenth Amendment, and Section 14, prohibits unreasonable searches and seizures. Katz v.United States (1967), 389 U.S. 347, 357. A seizure occurs for purposes of theFourth Amendment when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. United States v. Mendenhall (1980), 446 U.S. 544, 554. Generally, this occurs when a law enforcement officer, either by physical force or a show of authority, restrains a "person's liberty, so that a reasonable person would not feel free to decline the officer's *Page 6 
requests or otherwise to terminate the encounter." State v. Gonsior
(1996), 117 Ohio App.3d 481, 485.
 {¶ 14} Warrantless arrests are generally per se unreasonable, subject to specifically established exceptions. Katz v. United States,389 U.S. at 357. A warrantless arrest is, however, reasonable under theFourth Amendment to the United States Constitution when there is probable cause to believe that a criminal offense has been or is being committed.United States v. Watson (1976), 423 U.S. 411, 417-424. It is impossible to articulate a precise meaning of "probable cause." Illinois v.Gates (1983), 462 U.S. 213, 231. Thus, probable cause to arrest depends "upon whether, at the moment the arrest was made * * * the facts and circumstances within [the law enforcement officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio (1964), 379 U.S. 89, 91
(citations omitted).
 {¶ 15} On appeal, appellant first maintains that appellee failed to offer any evidence demonstrating the reliability or the basis of knowledge of the informant's tip. Therefore, appellant urges that little weight should have been given to that tip. Appellant forgets that in determining whether probable cause exists a court must examine the "`totality' of the facts and circumstances surrounding the arrest."State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212. Here, we find that the trial court simply mentioned that the tip was verified within the context of an examination of the totality of the circumstances surrounding Mitchell's arrest. *Page 7 
 {¶ 16} Appellant next compares a number of cases which have facts similar to the one before us. In each of these cases, the court found that the law enforcement officer or officers lacked probable cause to arrest the defendant(s).
 {¶ 17} The first cited case is State v. Cabell, 6th Dist. No. L-06-1026, 2006-Ohio-4914. Appellant contends that the facts of that case, which included a controlled buy of cocaine, tips from confidential informants, and an eight day surveillance of the defendant, Matthew Cabell, provide a stronger basis for a finding of probable cause to arrest than do the facts in the case before us; yet, in Cabell, this court affirmed the trial court's judgment in which it determined that law enforcement officers lacked said probable cause to arrest. We disagree.
 {¶ 18} In Cabell, members of the Toledo Police Department's Metro Drug Task Force received tips from two confidential informants stating that Cabell was selling drugs in the vicinity of Lewis Avenue, Alexis Road, and Laskey Road in Toledo. Id., ¶ 3. One of the confidential informants participated in a controlled buy of cocaine on March 2, 2005. Id. On March 3, 2005, the second confidential informant told the officers that Cabell would be delivering cocaine in the area by means of his tan van. Id., ¶ 4. Although the officers followed Cabell on that day, they did not observe any criminal activity. Id.
 {¶ 19} Over the next week, task force members continued their observation of Cabell. Id., ¶ 5. On March 7, 2005, Cabell was seen driving a blue automobile in the area of Alexis and Lewis. Id. On March 10, 2005, the first confidential informant *Page 8 
advised the police that Cabell would be delivering cocaine somewhere on Lewis Avenue between 6 and 7 p.m. that evening. Id. The task force set up surveillance in two unmarked cars at the entrance to the mobile home park where Cabell lived. Id. A third unmarked vehicle was stationed just outside the mobile home park on Lewis Avenue. Id. At approximately 6:30 p.m., the officers allowed a woman driving the tan van to leave the mobile home park. Id., ¶ 6. She went to a gas station on Lewis Avenue and returned to the mobile home park. Id. Cabell came out of a mobile home and entered the van. Id. The van started to leave the mobile home park. Id.
 {¶ 20} At that point, the officers decided to stop the van and blocked its egress with their unmarked motor vehicles. Id., ¶ 7. When the officers approached the van with their guns drawn, Cabell exited and ran. Id., ¶ 8. He was tackled and handcuffed. Id. A search of his pockets revealed four baggies of cocaine, a bag of marijuana, two cell phones, and some cash. Id. Cabell's girlfriend, who was in the passenger seat of the van was handcuffed, searched, and Mirandized. Id., ¶ 9. Her two children were also in the van. Id. It was later learned that the group was going to a restaurant to celebrate the older child's birthday. Id. The girlfriend gave the officers written consent to search the mobile home, where they found more cocaine and marijuana. Id., ¶ 10.
 {¶ 21} Cabell was charged with possession of cocaine and marijuana and trafficking in cocaine in marijuana. ¶ 2. He filed a motion to suppress any evidence gathered as the result of the seizure of his person and the subsequent searches. Id., ¶ 1. The trial court granted the motion to suppress, finding that Cabell was arrested when the *Page 9 
officers blocked his van with their unmarked vehicles and that the police lacked probable cause for that arrest. Id., ¶ 11. As stated infra, we affirmed the judgment of the trial court because the task force observed no criminal activity on March 10, 2005, that would give rise to probable cause to arrest Cabell. Id., ¶ 38.
 {¶ 22} As can be readily seen, the Cabell case is distinguishable from the case before us because Cabell's alleged criminal activity occurred on days separate from the day that he was arrested. In the instant case, the tip, the surveillance, and the arrest all occurred within a short period of time on the same day. Thus, we do not find appellant's argument predicated upon Cabell persuasive.
 {¶ 23} Appellant, relying on State v. Young, 6th Dist. No. E-04-013,2005-Ohio-3369, also argues that his conduct during the one-half hour of police surveillance at Woodland Avenue was equally consistent with innocent behavior as it was with criminal behavior and, therefore, could not serve as a basis for probable cause to arrest him.
 {¶ 24} In Young, the Erie County Drug Task Force received a tip from federal agents (who obtained this information from a federally indicted defendant) that Young would be traveling to Cleveland, Ohio in his own motor vehicle, a tan or cream-colored Infinity, on March 26, 2002, to purchase cocaine. Id., ¶ 3. The task force set up a surveillance of Young's residence on that day; however, Young never went to Cleveland. Id. Learning that a cocaine transaction was allegedly to occur on July 30, 2002, the task force again conducted a surveillance of Young's residence. Id., ¶ 4. During the early afternoon, Young came out of his house and put "something" in the trunk of a red *Page 10 
Cadillac driven by his girlfriend. Id., ¶ 5. The couple then drove east and stopped at a gas station to purchase fuel. Id. They then turned toward the city of Huron, Ohio, but were stopped by Huron police officers, who had been notified by the task force of the surveillance. Id. Both Young and his girlfriend were detained. Id.
 {¶ 25} A search of the trunk of the seized vehicle resulted in the discovery of a box containing a set of scales, $24,000, and plastic bags. Id., ¶ 7 and ¶ 8. As a result of the search, Young and his girlfriend were arrested for conspiracy to possess cocaine. Id., ¶ 5. Young filed a motion to suppress in which he alleged, inter alia, that the law enforcement officers lacked probable cause to stop the Cadillac for the purpose of arresting him. Id., ¶ 1. At the motion hearing, law enforcement officers were unable to testify that the objects found in the trunk were placed there by Young on July 30, 2002. Id., ¶ 7. Moreover, task force officers admitted that regardless of which route the car in which Young was a passenger was driven, it would be stopped if it was traveling east. Id., ¶ 8 and ¶ 9. After the hearing, the trial court denied Young's motion to suppress as it related to probable cause to arrest. Id., ¶ 10.
 {¶ 26} On appeal, we reversed that ruling, finding that the only facts and circumstances known to the task force concerning any criminal activity on the part of Young was the "tip" received from the federal agent. Id., ¶ 23. While we conceded that the tip may have justified a surveillance of Young's activities, we concluded that "there was no actual evidence of any criminal activity at the time of his arrest which reasonably indicated that [Young] was about to commit criminal acts." We found that the act of *Page 11 
placing some type of object in the trunk of the red Cadillac, purchasing gasoline, and traveling east toward Cleveland could be consistent with an innocent activity, e.g., shopping, as it could be with the criminal act of purchasing cocaine. Id. Thus, based upon the "tip" alone, we held that the "stop was illegal, appellant's arrest was illegal, and any evidence obtained subsequent to the arrest is tainted." Id., ¶ 24.
 {¶ 27} Unlike the circumstances in Young, the tip in this cause was not the sole fact offered to support probable cause to arrest appellant. Additionally, in the case before us, the facts of the tip were immediately verified. In particular, Mitchell drove to the 1300 block of Woodland Avenue in his maroon pickup truck and engaged in behavior that could be construed as drug trafficking. Furthermore, the fact that appellant's actions took place in front of property that he claims to own does not automatically classify his behavior as consistent with innocent activity. To repeat, it is but a single fact that must be considered within the total of the facts and circumstances known by the police officers involved in this cause. Moreover, the law enforcement officers involved in the Young case admitted that they would have stopped Young solely on the basis that the Cadillac was headed east toward Cleveland. Such an admission was not made in this cause. Therefore, the Young case is distinguishable from the present case.
 {¶ 28} Appellant further contends that the mere movement of hands, i.e., a hand-to-hand exchange, as observed by Detective Marzec, was insufficient to establish probable cause to arrest appellant. Nevertheless, the case, State v. Nelson (1991), 72 Ohio App.3d 506, appellant relies on for this contention can be distinguished from the *Page 12 
case at hand. In Nelson, the arresting officer saw a group of people standing in front of an apartment located in a high crime area. Id. at 507. He observed a "movement of hands" in the group, but failed to see anything, presumably illicit drugs, exchanged. Id. The group dispersed when they saw the police arrive. Id.
 {¶ 29} The arresting officer chased Nelson and a female juvenile down an alley. Id. He found them on a third floor porch. Id. Nelson and the female both told the officer that they were having an argument, but he handcuffed them because he "suspected drug activity." Id. The officer looked around the porch and found a vial of crack cocaine and a small plastic bag containing crushed cocaine. Id. at 508. The vial had a label with the name of a third individual on it. Id. However, the officer "arrested" Nelson, who was indicted for trafficking in drugs, drug abuse, and the possession of criminal tools. Id. at 507.
 {¶ 30} Nelson filed a motion to suppress the evidence related to the charged offenses. Id. He asserted that at the time that the officer handcuffed him, the officer lacked probable cause to arrest. Id. at 508. The common pleas court agreed. Id. The Eighth District Court of Appeals affirmed the judgment of the trial court holding that the officer's "observations of Nelson did not warrant a prudent man in believing a felony was in progress." Id.
 {¶ 31} In Nelson, the officer neither saw the defendant engage in a hand-to-hand exchange nor saw him engage in any type of drug activity prior to placing him in handcuffs, that is, arresting him. Here, the drug task force had a verified tip concerning *Page 13 
appellant and knew that he had previously engaged in selling drugs. Detective Marzec, who had arrested appellant for trafficking in drugs, saw appellant interact with individuals in what appeared to be drug transactions and then saw him hold up money received from one of those individuals to the sunlight. The detective and other members of the task force knew that appellant's driver's license was suspended[1] and that, despite the suspension, Mitchell was driving on the day in question. Thus, unlike Nelson, these law enforcement officers could reasonably believe that appellant was involved in criminal activity.
 {¶ 32} The final case relied upon by appellant is State v.Rivera, 6th Dist. No. L-04-1369, 2006-Ohio-1867. Rivera also involved a tip from a confidential informant stating that the defendant, Ricardo Rivera, was going to deliver a half kilo of powder cocaine to the informant in the parking lot of a strip mall between 5:30 and 6:00 p.m. on April 7, 2004. Id., ¶ 4. Rivera, accompanied by his girlfriend and two young sons arrived during the designated time period. Id., ¶ 6. As soon as Rivera parked the car, police officers surrounded it with their guns drawn; Rivera dropped a black satchel to the floor of the car. Id., ¶ 7. Rivera was pulled from the vehicle by the officers. Id., ¶ 8. A search of the satchel revealed 496 grams of powder cocaine. Id., ¶ 8. Rivera and his girlfriend were then formally placed under arrest. Id. *Page 14 
 {¶ 33} Rivera filed a motion to suppress the evidence, asserting that the search and seizure made pursuant to his arrest was "unlawful." Id. at 9. The trial court denied the motion to suppress. Id., ¶ 10. On appeal, we reversed the trial court's judgment on the basis that (1) the police did not personally observe any criminal activity justifying Rivera's detention; and (2) the sole basis for the stop was the informant's tip, and there was no indicia of reliability of that tip, e.g., the informant failed to identify the car that Rivera would be driving. Id., ¶ 26, ¶ 27, ¶ 30, and ¶ 31. Once again, a similar set of facts underlies our decision in Rivera, as in those cases discussed above. Consequently, we conclude that Rivera can also be distinguished from the case before us.
 {¶ 34} In sum, we find that, under the totality of the circumstances, the members of the drug task force had probable cause to arrest appellant. The specific facts, taken as true, considered by this court in reaching this finding are: (1) a verified tip from an informant; (2) appellant was driving with a suspended license; (3) appellant was a known to engage in drug trafficking; (4) the area in which the arrest occurred was a high crime/drug trafficking area; and (5) Detective Marzec observed appellant engage in a hand-to-hand exchange and then hold up money to the sunlight. Accordingly, appellant's sole assignment of error is found not well-taken.
 {¶ 35} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 15 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] All that the task force officers needed to know was that Mitchell's driver's license was suspended. They had no duty to ascertain whether he was driving under any type of privilege, e.g., an occupational privilege. See State v. Bonn (1995),101 Ohio App.3d 69. *Page 1