DECISION AND JUDGMENT ENTRY
{¶ 1} On October 26, 2006, appellee, Clemmye Bragg, was charged with one count of carrying a concealed weapon, a violation of R.C. 2923.12
and a felony of the fourth degree. He filed a motion to suppress evidence of the weapon's seizure, and, after a hearing, the Lucas County Court of Common Pleas granted the motion. *Page 2 
 {¶ 2} From that judgment, the state appealed and now assigns one error for review:
 {¶ 3} "The trial court's decision granting the Defendant-Appellee's Motion to Suppress was error in that the decision is not supported by the United States Supreme Court's opinion in Michigan v. Long (1983),463 U.S. 1032, which allows officers, absent custodial arrest of a suspect, to search a vehicle, including the passenger compartment, for weapons which the suspect may gain immediate access to."
 {¶ 4} Appellate review of a trial court decision on a motion to suppress evidence presents a mixed question of law and fact. State v.Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside,100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, ¶ 8, citing State v. Mills (1992),62 Ohio St.3d 357, 366. The appellate court must then accept the trial court's findings of fact provided that they are supported by competent, credible evidence. State v. Durnwald, 163 Ohio App.3d 361, 369,2005-Ohio-4867, ¶ 28, citing Burnside, supra. Next, the appellate court, conducting a de novo review, determines independently whether the facts in the case satisfy the applicable legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906.
 {¶ 5} At 3:00 a.m. on August 13, 2006, Officers Gregory Konzen and Robert Kay were patrolling in a marked police car in downtown Toledo, Ohio, and stopped at the intersection of Adams Street and Summit Street. Traffic was moderate, neither light nor *Page 3 
heavy. A car traveled through the intersection, perpendicularly in front of the officers, and the male driver yelled through his open car window to the officers to stop the sport utility vehicle driving in front of him because the driver had pointed a gun at him. The officers drove up next to this individual's car at the next red light; he repeated his claim that the SUV's driver had a gun and had pointed the gun at him.
 {¶ 6} Konzen and Kay, still in their vehicle, radioed a request for assistance while following the SUV. When the SUV stopped at a red light at the corner of Cherry Street and Summit Street, the officers initiated a stop by activating their vehicle lights. Other marked police vehicles and crews were patrolling the area and responded quickly. Both Konzen and Kay exited their vehicle. Konzen, sitting in the officers' vehicle's passenger seat, was directly to the left of the SUV. He and Kay both approached the SUV's driver's side while other responding officers, who had reached the intersection at the same time, approached the passenger side. The SUV contained the driver and three passengers.
 {¶ 7} Konzen and Kay immediately told the driver, appellee herein, to exit the vehicle. The other responding officers removed the passengers. Kay walked appellee to the rear of the SUV and performed a pat-down; no weapons were found on appellee's person. Meanwhile, Konzen checked appellee's identification for outstanding warrants and other officers searched the passenger compartment of the vehicle. Officer Barot, who had responded to the scene separately, found a handgun in the SUV's glove compartment. When Barot announced his find, Kay placed appellee in handcuffs. *Page 4 
 {¶ 8} Konzen testified that his check of appellee's identification revealed outstanding warrants, but neither he nor Kay specified the type of warrants. Also, neither Konzen nor Kay could pinpoint whether Kay placed appellee in handcuffs before or after Konzen ascertained the warrants' existence.
 {¶ 9} Kay told appellee he was under arrest for possession of a firearm when he placed appellee in handcuffs. Kay did not read appellee his Miranda rights, but maintained that appellee was not questioned. After appellee was told he was under arrest, appellee told Kay that the handgun belonged to him and that he had a concealed carry license. Kay then placed appellee in the rear of the police vehicle while officers checked whether appellee had a concealed carry license.
 {¶ 10} Appellee could not physically produce a permit to carry a concealed weapon, and a records check on the scene did not show that appellee had such a permit. Barot brought the handgun to Kay, who found it loaded; Kay unloaded and cleared it and placed it in the trunk of his police vehicle.
 {¶ 11} The trial court's judgment entry granted appellee's motion in a single, conclusory sentence. Instead, when the trial court orally announced its decision at a hearing, it explained its findings. It found that the officers possessed sufficient articulable suspicion to initiate the Terry stop of the SUV in the first instance. However, it further found the search of the SUV's passenger compartment improper because that search did not occur incident to appellee's arrest. First, the court found that officers discovered appellee's warrants after he was arrested for possessing the handgun; *Page 5 
therefore, the search of the SUV was not a search incident to arrest on the warrants. Second, appellee was not arrested until after the warrantless search of the passenger compartment, including the glove compartment, yielded the handgun. Due to that factual sequence, it found that the search was not a search incident to arrest as allowed byNew York v. Belton (1981), 453 U.S. 454, and State v. Murrell (2002),94 Ohio St.3d 489. Both the handgun and appellee's statements following his arrest were suppressed as fruits of the unlawful search.
 {¶ 12} Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. Terry v.Ohio (1968), 392 U.S. 1. Articulable suspicion is more than a mere hunch, but less than the level of suspicion required for probable cause. Id. at 27. Here, the officers conducted a Terry stop based on an individual's excited statements that a driver in traffic, appellee, had a gun and pointed it at the individual.
 {¶ 13} The state argues that the trial court's failure to applyMichigan v. Long (1983), 463 U.S. 1032, was reversible error. InLong, the United States Supreme Court held that a Terry search could validly extend beyond the person of the individual detained to the passenger compartment of the individual's vehicle. "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that the suspect is dangerous and the *Page 6 
suspect may gain immediate control of weapons." Michigan v. Long (1983),463 U.S. at 1049. However, this type of Terry search of a vehicle is only valid if the officers first possess a reasonable, articulable suspicion that the individual is dangerous or potentially dangerous and that a weapon may be in the vehicle. As in Terry, "`the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' If a suspect is `dangerous,' he is no less dangerous simply because he is not arrested." Id. at 1050, quoting Terry, 392 U.S. at 27.
 {¶ 14} The Ohio Supreme Court has applied Long to hold: "Where a police officer, during an investigative stop, has a reasonable suspicion that an individual is armed based on the totality of the circumstances, the officer may initiate a protective search [of a stopped vehicle] for the safety of himself and others." State v. Bobo (1988),37 Ohio St.3d 177, paragraph two of the syllabus, cert. denied by 488 U.S. 910.
 {¶ 15} Both Terry and Long balanced the suspect's Fourth Amendment interest against the immediate interests of law enforcement officers in protecting themselves from the danger posed by hidden weapons. SeeMaryland v. Buie (1990), 494 U.S. 325, 332-333 (analyzing and applyingTerry and Long to extend the "protective sweep" exception to residences). As in Long, it should be stressed that this rule "does not mean that the police may conduct automobile searches whenever they conduct an investigative stop * * *" Id "A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile."New York v. Class (1986), 475 U.S. 106, 112. Therefore, mere verbal nods to an unparticularized safety interest will not support a Long search. *Page 7 
 {¶ 16} The only issue, then, is whether the officers had, at the moment appellee was stopped, an articulable suspicion that appellee presented a danger and a weapon was in the vehicle, sufficient to justify a protective search. Kay and Konzen were told by an excited and agitated witness that the SUV's driver had a gun and had pointed the gun at him. U.S. v. Witherow (C.A. 6, 1996), 95 F.3d 1153. Although alternative explanations may be conjured for why one driver may accuse another of waving a handgun in traffic, these facts led the officers to rationally choose the side of caution and the resulting Long search of the vehicle was not unreasonable. State v. Williams, 5th Dist. No. 2004CA00354, 2005-Ohio-3345 (anonymous phone call that particularly described driver was waving gun out of car window justifiedLong search); State v. Day (1984), 19 Ohio App.3d 252, 255-256 (officer acts reasonably by conducting Terry search of suspect's person for concealed handgun on basis of anonymous tip that suspect had handgun).
 {¶ 17} Appellee acknowledges that the analysis of Terry andLong apply. However, appellee counters that because appellee was out of the car, the passenger compartment was out of reach, and there was no indication that appellee would be returning to the car, this matter is analogous to State v. Perkins (2001), 145 Ohio App.3d 583, State v.Henderson (Nov. 7, 1997), 2d Dist. No. 16016, and State v. Rivera, 6th Dist. No. L-04-1369, 2006-Ohio-1867. He also argues that the officers, even if justified in protectively searching the passenger compartment, were not justified in searching the glove compartment as part of the protective search. Each case is distinguishable on its facts. *Page 8 
 {¶ 18} First, Rivera is entirely inapposite to the facts sub judice. In Rivera, we reversed on the grounds that police officers lacked an articulate, reasonable suspicion to initiate a Terry stop in the first instance; because the initial investigatory stop was unjustified, we found that the officers could not have possessed an articulable suspicion justifying a limited protective search for weapons.Rivera, 2006-Ohio-1867, ¶ 28-29.
 {¶ 19} In Henderson, two officers effected a Terry stop of a vehicle which committed several moving violations. When initiating the stop, officers noticed the defendant-driver's shoulder "dip as if he was hiding something under his seat." The officers asked the driver to exit the car and asked him to produce a driver's license. When the driver said he did not have a driver's license, they placed the driver in the rear seat of the patrol car. Once he was there, both officers stated they did not feel the driver posed a danger. One officer ran a computer check to determine whether the driver was licensed, while the other officer searched the car on the suspicion that the driver had hidden something under the seat. Marijuana found under the driver's seat was suppressed on defendant's motion.
 {¶ 20} On appeal, the state argued that the search was permissible pursuant to Long. The court noted that such searches are permissible "based upon the officers' particularly vulnerable position existing because a full custodial arrest has not been effected and the individual may be permitted to reenter his vehicle before the investigation is over." Henderson, supra, citing State v. Oliver (1993),91 Ohio App.3d 607, 610. However, the court upheld the suppression of the evidence because (1) the *Page 9 
defendant was secured in the rear of the police vehicle, and (2) because they had not yet determined whether the defendant would be permitted to reenter his vehicle. In so holding, the court applied State v.Brown (1992), 63 Ohio St.3d 349, overruled by State v. Murrell (2002),94 Ohio St.3d 489, and State v. Hines (1993), 92 Ohio App.3d 163, which held that where a suspect is secured in the rear seat of a police vehicle, a protective search of the suspect's vehicle for weapons is unreasonable.
 {¶ 21} In Perkins, which applied Henderson, officers initiated a stop of a vehicle to issue a citation for "tailgating" the officers' police vehicle. Upon initiating the stop, the defendant-driver "dipped his body straight down towards the driver floorboard." Perkins,145 Ohio App.3d at 584. When the defendant opened his glove compartment to retrieve his license and registration, an officer saw marijuana in the glove compartment. Id. at 585. The defendant was secured in the rear of the police vehicle in order to (1) secure the marijuana, and (2) out of concern — caused by the furtive movement — that the defendant had access to a weapon. Since the defendant was secured in the police vehicle, thePerkins court decided to "stand by our decision in Henderson and find that there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle." Id. at 587.
 {¶ 22} Both Perkins and Henderson rely heavily on the suspect's secure placement in the rear of a police cruiser. Here, appellee was standing with Officer Kay at the rear of his vehicle during a Terry stop and was not yet in custody, rendering Perkins and Henderson inapposite. This fact renders the circumstances closer to those in Bobo, where *Page 10 
the defendant-driver had been asked to exit the car; the initialTerry stop was found reasonable under the totality of circumstances, including late night in a high crime area and the driver's furtive gesture.[1] Those same circumstances also created sufficient articulable suspicion that the driver, outside the car and not in custody, had a weapon in the car and the resulting protective search was justified.
 {¶ 23} This matter is, however, similar to Perkins andHenderson insofar as, at the time of the search, the officers did not know whether appellee would be returning to his vehicle. BothPerkins and Henderson held that the protective search allows byLong would only be justified if the officers knew the suspect would be returning to the vehicle where they suspected a weapon to be.
 {¶ 24} In spite of this single similarity, applying Perkins andHenderson makes no sense in light of the facts at hand. Once theTerry stop was under way and appellee was outside of the vehicle, two possibilities existed: Appellee would either be free return to it (whether as a driver or passenger) or the investigation would reveal probable cause and result in his arrest. If the officers placed appellee under arrest, thus knowing that he would not be returning to his vehicle, a search of the vehicle incident to arrest would be permitted pursuant to Belton and Murrell. If, however, the investigation yielded no probable cause to further detain appellee, he would have been free to return to his *Page 11 
vehicle; at that point, a protective search of the passenger compartment would clearly have been a valid Long search.
 {¶ 25} The above cases applied to these facts create a no-man's-land: A place where officers possess reasonable suspicion, sufficient to justify a Terry stop, that a potentially dangerous suspect is outside of his vehicle, not in custody; articulable suspicion exists that a handgun is inside the accessible portion of the passenger compartment; the investigation of the suspect is still under way; officers have not yet determined whether to allow him to go or detain him on probable cause. To create such an island of privacy, surrounded on all sides by an impending search, may be a purely logical result. But the consequence — suppression of the evidence which would have been seized but for the island's temporary existence — is not.
 {¶ 26} Perkins and Henderson place great emphasis in their analysis on whether "the suspect may gain immediate control of weapons."Long, 463 U.S. 1049. However, we emphasize Long's statement that "[t]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. Appellee was not secured or in custody and officers had not yet discovered warrants; they faced the possibility that appellee could return to a car from which he had very recently been seen not just possessing a handgun, but pointing a handgun. The resulting protective sweep of the SUV was reasonable under the circumstances. See State v.Watson, 157 Ohio App.3d 217, 2004-Ohio-2628, ¶ 15-16. *Page 12 
 {¶ 27} Further, assuming arguendo that the search was unreasonable (which it was not), suppression of the evidence should not be a foregone conclusion. The suppression rule is a judicially created measure to deter egregious police conduct; it is not "a personal constitutional right of the party aggrieved." Illinois v. Gates (1983), 462 U.S. 213,223, quoting United States v. Calandra (1974), 414 U.S. 338, 348. "The Court has stressed that the `prime purpose' of the exclusionary rule `is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" Illinois v. Krull (1987), 480 U.S. 340, 347, citingCalandra, 414 U.S. at 347. Hence, the exclusionary rule's applicability has always been a separate issue from whether the moving party's Fourth Amendment rights were violated. U.S. v. Leon (1984), 468 U.S. 897, 906
citing Illinois v. Gates, 426 U.S. at 223; Arizona v. Evans (1995),514 U.S. 1, 11-12.
 {¶ 28} Terry and Long require a look at the balance of interests involved: "There is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" Long, 463 U.S. at 1046, quotingTerry, 392 U.S. at 21. In both cases, the law enforcement officers' conduct was reasonable when the individual's interests were weighed against "the legitimate interest in crime prevention and detection, and the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they lack probable cause for an arrest." Id. at 1047, citing Terry, 392 U.S. at 24. *Page 13 
 {¶ 29} Applying Terry and Long to these facts, we conclude that the officers acted within Fourth Amendment bounds when they searched the SUV's passenger compartment. Because the officers' articulable suspicion that the SUV contained a handgun justified a protective sweep of the passenger compartment, they were also justified in searching compartments in the passenger compartment where a handgun could be placed or hidden. Long, 463 U.S. at 1049; State v. Bobo,37 Ohio St.3d at 180; Wyoming v. Houghton (1999), 526 U.S. 295, 302. The trial court also suppressed appellee's statement, made immediately after he was notified officers had found a gun in the car, as the fruit of the search. This holding is also reversed: Voluntary statements appellee made after he was properly under arrest are likewise not subject to suppression. Rhode Island v. Innis (1980), 446 U.S. 291, 300, citingMiranda v. Arizona (1966), 384 U.S. 436, 478. Appellant's assignment of error is well-taken.
 {¶ 30} The judgment of the Lucas County Court of Common Pleas is reversed and this case is remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT REVERSED. *Page 14 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., William J. Skow, J., Concur.
[1] Justices Wright and Sweeney dissented on the grounds that the initial stop was unreasonable, and so did not reach the issue of the reasonableness of the Long search. *Page 1