**[Cite as *State v. Steed*, 2016-Ohio-8088.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                        Court of Appeals No. WD-15-069

     Appellee                                    Trial Court No. 2015CR163

v.

Nathaniel Steed                                  **DECISION AND JUDGMENT**

     Appellant                                   Decided:  December 9, 2016

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Thomas A.
Matuszak, Chief Assistant Prosecuting Attorney, David T. Harold
and Channa B. Beard, Assistant Prosecuting Attorneys, for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Nathaniel Steed, appeals the October 6, 2015 judgment of the

Wood County Court of Common Pleas.  For the reasons that follow, we affirm.

{¶ 2} Appellant sets forth four assignments of error:

First Assignment of Error:  The trial court erred in denying appellant's motion to suppress evidence.

Second Assignment of Error:  The appellant was denied a fair trial due to prosecutorial misconduct.

Third Assignment of Error:  Appellant's convictions are against the manifest weight of the evidence.

Fourth Assignment of Error:  The trial court erred when it imposed consecutive sentences.

## I.  Factual Background

{¶ 3} On April 16, 2015, Ohio State Highway Patrol Trooper Ann Malone stopped a vehicle which was driven by appellant southbound on interstate 75 in Wood County, Ohio.  The trooper approached appellant's vehicle and informed him that he was stopped for traveling outside of his lane numerous times.  The trooper asked appellant for his driver's license, registration and proof of insurance, then inquired where he was going and from where had he come.  The trooper observed that appellant displayed unusual actions and did not respond correctly to her questions.  When the trooper returned to her patrol car she requested the dispatcher run appellant's driver's license, criminal history and the vehicle registration.

{¶ 4} After Trooper Malone heard back from the dispatcher, she returned to appellant's vehicle, told him to step out of the vehicle and go to the patrol car so she

2.

could run more information and make sure he was all right. Appellant exited the vehicle and walked to the patrol car with Trooper Malone. As the trooper patted down appellant, she felt a hard object by his waistband and asked him about it. Appellant became agitated, walked back to his vehicle and drove off. The trooper pursued appellant until he stopped the vehicle. Appellant was arrested. While in the patrol car, Trooper Malone gave appellant his *Miranda* rights.

{¶ 5} Trooper Malone informed other officers that appellant had something in his waistband when he was initially stopped, and may have discarded it from the vehicle because there was nothing in his waistband when he was taken into custody. One officer returned to the area of the initial traffic stop and found a black bag on the highway which contained pills and crushed pills.

{¶ 6} On May 21, 2015, the Wood County Grand Jury issued a six-count indictment against appellant. Count 1 charged appellant with failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(3), a first degree misdemeanor; Count 2 charged appellant with tampering with evidence, in violation of R.C. 2921.12(A)(1) and (B), a felony of the third degree; Counts 3, 4 and 5 charged appellant with aggravated possession of drugs, in violation of R.C. 2925.11(A) and (C)(1)(a), felonies of the fifth degree; and Count 6 charged appellant with possession of drugs, in violation of R.C. 2925.11(A) and (C)(2)(a), a first degree misdemeanor. Appellant pled not guilty to all counts and filed a motion to suppress. A suppression hearing was held. The trial court denied the motion to suppress.

3.

**{¶ 7}** On August 6, 2015, the Wood County Grand Jury issued a second indictment against appellant. These new charges were ultimately dismissed.

**{¶ 8}** Following a trial, the jury found appellant guilty of all six counts of the original indictment. Appellant was sentenced to 40 months in prison. Appellant appealed.

## II. Arguments and Analysis

### First Assignment of Error

**{¶ 9}** Appellant contends the trial court erred in denying his motion to suppress. Appellant acknowledges the initial traffic stop was proper, but argues the officer lacked reasonable articulable suspicion of further criminal activity to extend the stop and require him to exit the vehicle "for a pat down." Appellant further claims he was not properly *Mirandized* so his statements to police should have been suppressed.

**{¶ 10}** The state counters when an officer witnesses a vehicle drift over lane markings, the officer has probable cause to pull over the vehicle. The state maintains due to the events which occurred, under the totality of the circumstances, Trooper Malone had probable cause to extend the traffic stop to determine if appellant was under the influence of alcohol or drugs.

### Motion to Suppress Standard

**{¶ 11}** "Appellate review of a motion to suppress presents mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100.

4.

The appellate court must accept the trial court's findings of fact, as long as the facts are supported by competent, credible evidence. *Id.* The appellate court applies a de novo standard of review to determine whether the facts satisfy the applicable legal standard. *Id.* *See also State v. Bragg*, 6th Dist. Lucas No. L-07-1162, 2007-Ohio-5993, ¶ 4.

## Motion to Suppress

{¶ 12} Appellant argued in his motion to suppress before the trial court that the traffic stop and detention were undertaken without reasonable suspicion or probable cause. Appellant claimed the length of the detention exceeded permissible bounds of a traffic stop to issue a citation or warning, thus all evidence obtained as a result of the stop and detention must be suppressed. Appellant further claimed he was subjected to custodial interrogation without being advised of his *Miranda* rights so all statements he made must be suppressed.

## Suppression Hearing

{¶ 13} At the suppression hearing, Trooper Malone testified that on April 16, 2015, at approximately 2:00 a.m., she saw the wheels of the vehicle appellant was driving cross over the dotted white line three times. After she saw the marked lane violations, she activated the patrol car's emergency lights. In the trooper's experience, the causes of marked lane violations could be a driver impaired with alcohol and/or drugs, a fatigued driver, a driver with a medical condition or driver inattention.

{¶ 14} The patrol car Trooper Malone was driving was equipped with a video recorder which started recording one minute before the emergency lights were activated.

5.

The patrol car was also equipped with an audio recorder which started recording when the emergency lights were activated.

{¶ 15} Upon Trooper Malone activing the lights, appellant made a complete stop on the highway in the middle of the three lanes. Thereafter, appellant slowly drove the vehicle to the right lane, then over to the right shoulder and stopped. Appellant then put the vehicle into reverse and backed up toward the patrol car until Trooper Malone blew the horn for appellant to stop. The trooper noticed appellant was actively looking at her in his rearview mirror which indicated to her that he was not comfortable with her presence.

{¶ 16} Trooper Malone got out of her patrol car and approached the passenger side of the vehicle appellant was driving and asked to see his license, the vehicle's registration and proof of insurance. Appellant produced his driver's license. Appellant asked why he has was stopped and the trooper advised him he traveled outside of his lane numerous times. The trooper questioned appellant about where he was coming from and where he was going. Appellant said he was coming from Michigan and going to Alabama. When asked why he was headed to Alabama, appellant said his wife was on dialysis. This response did not make sense to the trooper. Appellant then explained he was going to Alabama to bring some people back to help him with his wife. Trooper Malone detected appellant's speech was somewhat slurred, but she did not smell alcohol.

{¶ 17} Trooper Malone returned to the patrol car and called dispatch to run the vehicle's registration as well as appellant's license and criminal history. She asked for

6.

the criminal history because she felt there were several criminal indicators present. The trooper also requested a canine handler because "[a]t that point [she] had reasonable, articulable suspicion that there was criminal activity afoot with all the different indicators that were present." The trooper estimated about nine minutes elapsed from the time of her initial contact with appellant until she had "a canine responding to my location."

{¶ 18} Trooper Malone again returned to appellant's vehicle and asked him if he was on any prescription medication. Appellant replied he was on diet pills and had fibromyalgia.

{¶ 19} Trooper Malone informed appellant he needed to step out of the vehicle and go to the patrol car so she could run some more information and make sure he was all right. A cell phone rang and appellant grabbed it and tried "to stash it underneath the front seat." The trooper instructed appellant to put his hands where she could see them. Trooper Malone told appellant several times to exit the vehicle.

{¶ 20} Appellant eventually exited the vehicle and walked towards the patrol car with Trooper Malone. The trooper asked appellant for consent to pat him down to make sure he did not have any weapons. "He wasn't really wanting me to do that. He did consent to the pat-down." The trooper stated she did not believe she needed appellant's consent to conduct the pat-down. Trooper Malone told appellant several times to put his hands behind his back. She started to pat him down in the waistband area and he moved. The trooper felt a hard object by appellant's waistband and asked him what he had. Appellant "would not allow [the trooper] to pat that area down. At that time he became

7.

highly agitated and walked back to his vehicle." Trooper Malone instructed appellant he was not allowed to leave, but he got into the vehicle and drove off.

{¶ 21} The trooper pursued appellant for about two miles before he stopped the vehicle. Other officers responded to the scene. A felony traffic stop was initiated and appellant was arrested. Appellant was searched and placed in the backseat of Trooper Malone's patrol car. While in the patrol car, Trooper Malone gave appellant his *Miranda* warnings. Appellant said he understood his rights.

{¶ 22} Trooper Malone informed Sergeants Jason Eiden and Shawn Robinson that appellant previously had something in his waistband and "he possibly discarded that from the vehicle because there was nothing in his waistband * * * [when he was] taken into custody." Trooper Malone and Sergeant Robinson transported appellant to the Bowling Green State Highway Post while Sergeant Eiden went back to the scene of the initial traffic stop. At or near that location, Sergeant Eiden found "a black bag with numerous crushed up, some were still distinct pills."

{¶ 23} At the post, appellant was interviewed. Trooper Malone said there was no break in custody between the time appellant was *Mirandized* and interviewed. She also said appellant did not invoke his right to remain silent.

{¶ 24} Sergeant Robinson testified at the suppression hearing as to his involvement in the investigation concerning appellant. The sergeant initially responded to the scene where appellant was arrested, then went to the post. The sergeant confirmed with Trooper Malone that appellant had received *Miranda* warnings. The sergeant

8.

proceeded to interview appellant for 15 to 20 minutes; the interview was not recorded. The sergeant wrote down on a form the questions he asked and the answers appellant gave during the interview. Although appellant was asked to sign the form, he "[d]idn't want to sign."

## Trial Court's Decision

{¶ 25} The trial court denied the motion to suppress on two grounds. First, the court found the initial traffic stop was legal as there was probable cause for Trooper Malone to stop appellant because she witnessed him commit marked lane violations, and the second stop was supported by probable cause since appellant failed to comply with the order or signal of an officer. Next, the court held that although appellant may be hard of hearing, he is not so hearing impaired that the waiver of his *Miranda* rights was invalid. The court found appellant would have been able to hear Trooper Malone read him his rights in the relative quiet of the patrol car. The court further found appellant clearly indicated he understood his rights.

{¶ 26} We note the trial court did not specifically address the issue of the duration of the traffic stop in its decision. Crim.R. 12(F) states, "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record." Notwithstanding, because we have the transcript from the suppression hearing as well as the arguments presented by counsel, we can review the issue of the duration of the traffic stop raised by appellant on appeal. *See State v. Jarvis*, 6th Dist. Lucas No. L-99-1184, 2000 Ohio App. LEXIS 1999 (May 12, 2000).

9.

**Prolonged Traffic Stop**

{¶ 27} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. When a police officer stops a vehicle and detains its occupants, a seizure within the meaning of those provisions has occurred. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Accordingly, to effectuate a traffic stop, an officer must have probable cause to believe the driver is violating a traffic or equipment regulation or there is articulable and reasonable suspicion that the vehicle or its occupant is subject to seizure for violating the law. *Id.* at 661, 663. An officer who witnesses a driver cross over the lane line may make a constitutional traffic stop of the driver. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, syllabus.

> [W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003-03-007, 2004 Ohio 184, ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the

totality of the circumstances and consider whether the officer diligently conducted the investigation." *State v. Carlson* (1995), 102 Ohio App.3d 585, 598-599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521-522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605]. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

{¶ 28} "If during the initial detention * * * the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997).

{¶ 29} Here, the record shows it is undisputed that Trooper Malone's initial traffic stop of appellant was proper. Appellant only takes issue with the trooper extending the stop and requiring him to exit the vehicle and be patted down.

{¶ 30} A review of the record indicates during Trooper Malone's initial contact with appellant, she felt several criminal indicators were present such that she "had reasonable, articulable suspicion that there was criminal activity afoot." These criminal indicators included appellant stopping the vehicle in the middle of the highway, putting the vehicle in reverse, actively looking in his rearview mirror, providing incomplete answers and his lack of eye contact. The video and audio recording of the stop substantiates the trooper's testimony regarding how appellant was driving and his incomplete responses.

11.

**{¶ 31}** Trooper Malone testified during her second contact with appellant, he avoided eye contact and "he wasn't providing the correct answers, he was providing incomplete answers." When the trooper told appellant to step out of the vehicle, he failed to timely comply. Rather, the trooper had to tell appellant more than six times to exit the vehicle and leave the cell phone in the vehicle. It took appellant almost a minute to follow the trooper's commands. The audio recording verifies the trooper's testimony regarding appellant's statements and her numerous orders for appellant to exit the vehicle and leave the cell phone, and the video recording depicts appellant not timely leaving the vehicle.

**{¶ 32}** A police officer may order a motorist to step out of a vehicle which has been properly stopped for a traffic violation. *State v. Maddux*, 6th Dist. Wood No. WD-08-065, 2010-Ohio-941, ¶ 6. An officer can also command a motorist to sit in the patrol car during the detention, "reasoning that, akin to *Mimms*, such an order 'is a modest incremental intrusion justified by the nature of the traffic stop itself.'" (Citation omitted.) *Id*. *See also Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

**{¶ 33}** Here, based on the totality of the circumstances, we find Trooper Malone had a reasonable articulable suspicion to prolong the traffic stop and require appellant to exit the vehicle so the trooper could continue her investigation into whether appellant was fit to drive or was, in fact, impaired.

12.

**{¶ 34}** With respect to Trooper Malone's attempt to conduct a pat down search of appellant before he entered the patrol car, the trooper asked appellant if he had a problem with her patting him down before he got into the front seat of the patrol car to make sure he did not have a weapon. The trooper then started to search appellant around his waist, but he became very resistant. Appellant returned to his vehicle despite the trooper's directives and drove off.

> The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], *supra*, at 27. While probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. *Id.* The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence. *Terry*, *supra*, at 24, 30.

*State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

**{¶ 35}** Thus, "the driver of a motor vehicle may be subjected to a brief patdown search for weapons where the detaining officer has a lawful reason to detain said driver in the patrol car." *State v. Evans*, 67 Ohio St.3d 405, 410, 618 N.E.2d 162 (1993).

13.

**{¶ 36}** Here, based on the totality of the circumstances, we find Trooper Malone had an objective, lawful reason to pat down appellant prior to him sitting in the front seat of the patrol car. The record shows the trooper did not know whether appellant was impaired, but she did know he was being evasive and not fully cooperative. In addition, the trooper had a reasonable belief that criminal indicators were present, which also reinforced the suspicion that appellant may have a weapon.

### Miranda Warnings

**{¶ 37}** When a suspect is subjected to custodial interrogations, the state has the burden of establishing compliance with *Miranda* and a waiver of the suspect's *Miranda* rights. *State v. Grandberry*, 6th Dist. Erie No. E-07-058, 2008-Ohio-1960, ¶ 18. The state must prove by a preponderance of the evidence that the suspect made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. *State v. Barker*, Slip Opinion No. 2016-Ohio-2708, ¶ 30. The effectiveness of *Miranda* warnings can be compromised if there has been a significant lapse in the investigation. *State v. Roberts*, 32 Ohio St.3d 225, 232, 513 N.E.2d 720 (1987). Police are not required to readminister *Miranda* warnings when a relatively short period of time has elapsed since the initial warnings. *State v. Mack*, 73 Ohio St.3d 502, 513-514, 653 N.E.2d 329 (1995).

**{¶ 38}** In order to determine if the warnings remain effective or have become stale, a totality of the circumstances test is employed involving the following factors criteria:

14.

(1) the length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect. *Id.*, quoting *State v. McZorn*, 288 N.C. 417, 434, 219 S.E.2d 201 (1975).

{¶ 39} Here, appellant was given *Miranda* warnings by Trooper Malone at approximately 2:30 a.m., after he was arrested and placed in the back of the patrol car. The video and audio recording from the patrol car indicates the trooper administered *Miranda* warnings and appellant acknowledged he understood his rights. Appellant then announced there were no drugs or guns in the car. Trooper Malone responded she was not sure why he would run and appellant stated he did not want her to take his money. At about 4:00 a.m., while appellant was still in custody, he was interviewed by Sergeant Robinson at the patrol post and made certain statements.

{¶ 40} The trial court, in its decision, found appellant would have been able to hear Trooper Malone read him his *Miranda* rights, and appellant clearly indicated he understood his rights.

{¶ 41} A review of the record reveals appellant did not have any problems conversing with the trooper while in the patrol car. There is no indication appellant did

15.

not hear or understand Trooper Malone. We therefore find competent, credible evidence in the record supports the trial court's determination that appellant would have been able to hear Trooper Malone give him the *Miranda* warnings. We further find appellant knowingly and voluntarily waived his *Miranda* rights.

{¶ 42} With respect to the effectiveness of the *Miranda* warnings, applying the factors set forth in *Roberts* to this case shows appellant was given the *Miranda* warnings by Trooper Malone after he was arrested. Appellant stated he understood his rights then immediately waived his rights when he initiated a conversation with the trooper. Approximately an hour and one-half later at the highway patrol post, Sergeant Robinson interviewed appellant. Although the *Miranda* warnings and the interview occurred in different places and were administered by different law enforcement officers, there was no change in appellant's custodial status. During the time appellant was in custody, the record shows he was initially somewhat upset, but as the night progressed, he "lightened up." The statements appellant claims should have been suppressed were made when he was no longer upset.

{¶ 43} Reviewing these facts in consideration of the totality of the circumstances test factors, we find the *Miranda* warnings given to appellant remained in effect at the time he was interviewed at the patrol post, as a relatively short period of time elapsed between the warnings and interview, and there is no indication appellant's appreciation of his rights diminished during that time. Based on the foregoing, the trial court did not err

16.

in denying appellant's motion to suppress. Accordingly, appellant's first assignment of error is not well-taken.

## Second Assignment of Error

{¶ 44} Appellant argues he was denied a fair trial due to prosecutorial misconduct during opening and closing arguments. Appellant contends the prosecutor, in his opening statement, said "I will skip to the punch line for you all, the defendant confessed everything he is charged with here today; but he has the right to a trial and that is why we are all here." The prosecutor then said, "But, he has a right to a jury trial so we will try not to drag it out any longer than we absolutely have to."

{¶ 45} During closing argument, the prosecutor said, "Folks, right now I expect most of you are sitting there asking yourselves why did this case go to trial * * * and the answer is the defendant has a constitutional right to a trial by jury." The prosecutor also said, "The defense is, I hope I have one stupid juror, that is what the defense is looking for right now. Somebody who was foolish enough to buy into what the defense has been pitching which is maybe that was somebody else's dope on Interstate 75." And, the prosecutor said,

> So ask yourself what was the profit margin in it if people were going
> to sell it and to whom were they going to sell it? Somebody who got
> hooked on Oxycodone because of bad surgery? Workers' Comp[.] injury?
> Maybe some local teenagers who decided they were going to have fun

17.

Friday night?  That is what this case is about, it is poison for profit, and he was the one making a profit or attempting to profit.

{¶ 46} Appellant asserts the prosecutor is basically undermining the judicial system with his remarks that appellant was wasting everyone's time and taxpayer money. Appellant further claims the prosecutor argued, in his closing argument, facts not in the record because the prosecutor discussed the social ramifications of drug trafficking, but appellant was charged with possession of drugs, not drug trafficking.  As trial counsel did not object to these remarks, appellant concedes he waived all but plain error on review.

{¶ 47} The state counters there was no prosecutorial misconduct, as the remarks were not constitutionally improper.  The state maintains the record supports the contention that appellant admitted to the crimes, and it is proper for the prosecutor to argue motive.

{¶ 48} Generally, a prosecutor is entitled to considerable latitude in opening statement and closing arguments.  *State v. Gravelle*, 6th Dist. Huron No. H-07-10, 2009-Ohio-1533, ¶ 70, citing *State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). However, the prosecutor must "avoid insinuations and assertions which are calculated to mislead the jury," must not "express his personal belief or opinion * * * as to the guilt of the accused" and cannot "allude to matters which will not be supported by admissible evidence." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).  For a prosecutor's remarks to be prejudicial, the statements must be "so inflammatory as to render the jury's decision a product solely of passion and prejudice." *State v. Williams*,

18.

23 Ohio St.3d 16, 20, 490 N.E.2d 906 (1986). Prosecutorial misconduct rises to plain error if it is clear that an accused would not have been convicted in the absence of the improper statements. *State v. Wagner*, 2015-Ohio-5502, 57 N.E.3d 109, ¶ 75 (6th Dist.).

{¶ 49} Here, a review of the challenged remarks made by the prosecutor reveals the statements were improper, but were not so inflammatory or prejudicial such that reversal would be justified. We therefore find appellant was not denied a fair trial due to the remarks made by the prosecutor during opening and closing arguments. Accordingly, appellant's second assignment of error is not well-taken.

### Third Assignment of Error

{¶ 50} Appellant asserts his convictions for possession of drugs and tampering with evidence are against the manifest weight of the evidence. Appellant maintains the only evidence presented at trial that he was in possession of drugs was the testimony of the officers that appellant admitted it was his bag of pills which was found on the highway. Appellant contends the alleged statement was not recorded, and the handwritten statement by Sergeant Robinson was not signed by appellant. Appellant also argues that although Sergeant Eiden testified that when he discovered the bag of pills on the road it was easily identifiable, the bag could not be seen on the dash-cam video from Trooper Malone's patrol car. Appellant claims the bag could not have been thrown from his vehicle because it would have been visible on the video.

{¶ 51} The standard of review for manifest weight is the same in a criminal case as in a civil case, and an appellate court's function is to determine whether the greater

19.

amount of credible evidence supports the verdict. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Circumstantial and direct evidence inherently possess the same probative value and are subjected to the same standard of proof. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. When determining whether a conviction is against the manifest weight, the appellate court must review the record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility and decide, in resolving any conflicts in the evidence, whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio 6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *Thompkins* at 387.

{¶ 52} Here, appellant was charged with tampering with evidence, aggravated possession of drugs and possession of drugs.

### Tampering with Evidence

{¶ 53} R.C. 2921.12(A)(1) provides in relevant part that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

### Possession of Drugs

{¶ 54} R.C. 2925.11(A) states in pertinent part that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

20.

{¶ 55} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of drugs may be actual or constructive. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Id.* The mere presence of an individual in an area where illegal drugs are found is, by itself, not sufficient to establish constructive possession of drugs. *State v. Durr*, 6th Dist. Sandusky No. S-97-056, 2000 Ohio App. LEXIS 3360, *11-12 (July 28, 2000). However, "'constructive possession can be inferred from a totality of the evidence where sufficient evidence, in addition to proximity, supports dominion or control over the contraband.'" (Citation omitted.) *Id.* at *12.

{¶ 56} Here, we find appellant's convictions for tampering with evidence and possession of drugs were not against the manifest weight of the evidence, as credible proof in the form of direct and circumstantial evidence was presented that appellant constructively possessed drugs and concealed evidence.

{¶ 57} The record shows when appellant was initially stopped by Trooper Malone, he tried to resist her attempts to conduct a pat down search. Nevertheless, the trooper testified she felt a large bulge in appellant's waistband. Appellant then fled. Trooper Malone pursued appellant, and after he stopped, he was searched and taken into custody.

21.

Nothing was found in appellant's waistband; the bulge that Trooper Malone felt during the initial stop was no longer there. Trooper Malone testified she told Sergeant Eiden she thought something was thrown from appellant's vehicle during the pursuit. The sergeant testified he returned to the location of the initial stop and worked his way south along the interstate; he found a grayish-black zippered pouch with powder and pills lying in the road. Meanwhile, at the patrol post, Sergeant Robinson testified when he interviewed appellant, appellant admitted he had pills when he was stopped by Trooper Malone and had thrown the pills out of the vehicle after he fled.

{¶ 58} Upon a review of the entire record, weighing both the direct and circumstantial evidence as well as considering the credibility of the three witnesses who testified at trial, we cannot say the evidence weighed heavily against appellant's conviction or that the jury lost its way in finding appellant guilty. Accordingly, appellant's third assignment of error is not well-taken.

## Fourth Assignment of Error

{¶ 59} Appellant contends the trial court erred when it imposed consecutive sentences because all of the charges were the result of a single incident.

{¶ 60} The state counters the trial court made the required findings under R.C. 2929.14(C)(4), the trial court stated that it considered the presentence report as well as appellant's criminal history and background.

{¶ 61} The standard of appellate review of felony sentences is set forth in R.C. 2953.08. This court outlined that standard of review in *State v. Tammerine*, 6th Dist.

22.

Lucas No. L-13-1081, 2014-Ohio-425, as limiting our review to whether there is clear and convincing evidence to support the trial court's findings and whether the sentence is contrary to law.

{¶ 62} Consecutive sentences may be imposed at the court's discretion. Before imposing consecutive sentences, the trial court must find consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and that one of the circumstances listed at R.C. 2929.14(C)(4)(a), (b), (c) existed. *See* R.C. 2929.14(C)(4).

{¶ 63} Here, a review of the record, including the transcript of the sentencing hearing, shows the trial court noted appellant had previously served two prison sentences, one "in 1992 * * * for Possession of Cocaine, found guilty by a jury, and sentenced to three to five years in prison." The second in "1996 * * * Possession of Cocaine, and * * * a Weapons Felony Firearm and Fleeing a Police Officer in a Vehicle, sentenced to 6 to 36 months in prison." The court also observed appellant had two other drug charges, one in 2005 for possession of cocaine, and the other in 2009 for trafficking in crack cocaine. The court, in ordering consecutive sentences, found:

> no single term could adequately protect the public or punish the offender. The vast amount of drugs that were being trafficked through the county present a serious danger to many individuals and would not occur without people such as the defendant engaged in that trafficking. His

23.

criminal record shows, also, that consecutive terms are needed to protect the public. His prior convictions have not resulted in the defendant changing his drug trafficking behavior and also the only logical way to do that is by removing him from the opportunity to traffic in those substances, many of which are very serious and are causing many serious problems in the community.

{¶ 64} We find the trial court satisfied the first and second statutory requirements under R.C. 2929.14(C)(4). The court found no single term could adequately protect the public or punish the offender. This tracks the language of the statute. The court further determined imposing consecutive terms was the only way to stop appellant's participation with drugs, as the drugs caused serious problems in the community. While this does not track the language of the statute, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, it can be determined from the court's statement that it engaged in this analysis because it indicates consecutive sentences were imposed in direct relation to the seriousness of appellant's conduct and the danger appellant presents to the public.

{¶ 65} The trial court also found R.C. 2929.14(C)(4)(c) applied as appellant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime." This tracks the language of the statute. In addition, the trial court incorporated the required findings into the judgment entry of

24.

sentencing. Since there is clear and convincing evidence in the record to support the conclusion that the trial court made all of the findings required by R.C. 2929.14(C) at the time of sentencing, the imposition of consecutive sentences was proper and not contrary to law. Accordingly, appellant's fourth assignment of error is not well-taken.

{¶ 66} The judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                           _____

                                                       JUDGE

Arlene Singer, J.                                 

                                        _____

James D. Jensen, P.J.                                         JUDGE
CONCUR.

                                        _____

                                          JUDGE