[Cite as *State v. Stone*, 2019-Ohio-3214.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Maumee

    Appellee

v.

Sally A. Stone

    Appellant

Court of Appeals No. L-18-1144

Trial Court No. 17TRC06995-A

**DECISION AND JUDGMENT**

Decided: August 9, 2019

* * * * *

John B. Arnsby, Municipal Prosecutor, City of Maumee, for appellee.

Abbey M. Flynn, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Sally Stone, appeals from the September 11, 2018 judgment of the Maumee Municipal Court, where she was sentenced to 180 days of incarceration, with 177 days suspended and 3 days in an intervention program, following her no-contest

plea to operating a motor vehicle under the influence in violation of R.C. 4511.19(A), a misdemeanor of the first degree. Finding error in the record below, we reverse and remand.

## Assignments of Error

{¶ 2} Appellant sets forth the following assigned errors:

1. The trial court committed reversible error when it denied the motion to suppress.

2. The trial court erred in denying the motion to suppress because the findings of fact are against the manifest weight of the evidence.

## Facts

{¶ 3} Officer Sean Bakhsh of the Maumee Police Division testified that on September 23, 2017, he observed appellant's vehicle traveling 35 m.p.h. in a 50 m.p.h. zone. He then observed her, at approximately 2:52 a.m., pulling into a gas station that he believed, but could not confirm, was closed.

{¶ 4} As appellant's vehicle left the gas station, Bakhsh turned on his patrol camera and began to pursue her. He testified that the camera began recording 60 seconds of footage before he turned it on. Bakhsh alleged that before appellant was in sight of the camera, he witnessed her vehicle cross over a marked lane. He stated that appellant's back right tire crossed over the road's far-right line by approximately five inches. He claimed to have seen this through his right-side passenger window, and he admitted that the patrol camera failed to capture it. Bakhsh did not stop appellant immediately after this alleged violation, because he wanted to see a pattern of impaired driving.

2.

{¶ 5} Bakhsh continued to follow appellant, and he said that she then almost committed another marked-lanes violation, and that he initiated a traffic stop after he observed this nearly second violation. After stopping appellant, both Bakhsh and his partner approached her, and she stepped out of her vehicle. They then administered field sobriety tests. According to Bakhsh and his police report, she failed the eye-nystagmus test, the walk-and-turn test, the one-leg-stand test, and her body was noticeably swaying. She was arrested and transported to the police station, where she failed a breathalyzer test with a 0.164 g/210L BAC.

{¶ 6} Appellant was charged with operating a vehicle while under the influence in violation of R.C. 4511.19(A)(1)(a), operating a vehicle with a prohibited concentration of alcohol in breath in violation of R.C. 4511.19(A)(1)(d), failure to drive within marked lanes in violation of Maumee Ordinance 331.08, and expired plates in violation of Maumee Ordinance 335.10.

{¶ 7} The police report listed the marked-lanes violation and appellant's slow speed as reasons for the traffic stop, and it states the expired plates were not observed until the stop had been initiated. The other officer present in the patrol car with Bakhsh during appellant's pursuit and arrest did not testify in the record.

{¶ 8} Appellant moved to suppress all the evidence, including the field sobriety and breathalyzer test results derived from the traffic stop and arrest. A suppression hearing was held on March 7, 2018. The trial court found Bakhsh's testimony to be credible, and it denied the motion to suppress.

3.

**{¶ 9}** On May 29, 2018, appellant entered a no-contest plea and was found guilty of operating a vehicle while under the influence of alcohol pursuant to R.C. 4511.19(A)(1)(a). The court sentenced her to 180 days of incarceration, with 177 days suspended and 3 days in a state certified driver's intervention program. The court imposed a one-year inactive community control sanction.

**{¶ 10}** The sentencing entry was journalized on September 11, 2018, and appellant timely appeals.

## Standard of Review

**{¶ 11}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. The appellate court must accept the trial court's findings of fact if the facts are supported by competent, credible evidence. *State v. Steed*, 2016-Ohio-8088, 75 N.E.3d 816, ¶ 11 (6th Dist.). This court applies a de novo standard to determine if facts satisfy the applicable legal standard. *State v. Bragg*, 6th Dist. Lucas No. L-07-1162, 2007-Ohio-5993, ¶ 4.

## Legal Analysis

**{¶ 12}** Appellant's two assigned errors challenge the denial of her motion to suppress, and we will address them simultaneously.

**{¶ 13}** Appellant first argues the motion was improperly denied because Bakhsh did not have probable cause or reasonable, articulable suspicion to initiate the traffic stop

on September 23, 2017.  Appellant also contends there is no competent, credible evidence to support the denial of her motion to suppress.

{¶ 14} Appellee argues against both assigned errors, asserting that the motion to suppress was properly denied because the evidence in the record supports that Bakhsh had probable cause or reasonable, articulable suspicion to initiate the stop.

{¶ 15} "In order to conduct an investigative stop of a motor vehicle, a police officer must have an articulable and reasonable suspicion that the motorist is engaged in criminal activity or is operating his vehicle in violation of the law." *City of Sylvania v. Comeau*, 6th Dist. Lucas No. L-01-1232, 2002-Ohio-529, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct.1391, 59 L.Ed.2d 660 (1979).  "The propriety of an investigative stop must be viewed in light of the totality of the circumstances." *State of Ohio v. Marcum*, 2013-Ohio-2652, 993 N.E.2d 1289, ¶ 12 (5th Dist.), citing *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus.

{¶ 16} Here, Bakhsh testified that he observed appellant driving slowly and in violation of the marked-lanes law.  The trial court found his testimony credible.

{¶ 17} Both R.C. 4511.33 and Maumee Ordinance 331.08, which codify the marked-lanes law, provide:

(A)  Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction * * * (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and

5.

shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

{¶ 18} A marked-lanes violation occurs only when a driver travels completely across the line. *State v. Baker*, 6th Dist. Wood No. WD-13-074, 2014-Ohio-2564, ¶ 9, citing *State v. Parker*, 6th Dist. Ottawa No. OT-12-034, 2013-Ohio-3470, ¶ 8.

{¶ 19} We point to *Huffman*, where we held that Huffman's vehicle was unlawfully stopped, and that as a result his motion to suppress was improperly denied. *State v. Huffman*, 6th Dist. Lucas No. L-16-1241, 2017-Ohio-7007, ¶ 12. *Huffman* is particularly instructive in this matter because, in *Huffman*, we found that an officer's testimony was in conflict with what video evidence in the record revealed and, as a result, we disregarded the trial court's finding that the officer was credible. *Id*. at ¶ 9-12. The officer in *Huffman* testified that he observed Huffman commit a marked-lanes violation by crossing over the centerline and causing oncoming traffic to swerve. *Id.* at ¶ 9. Nevertheless, we found the video failed to demonstrate that Huffman traveled over the line, and that nothing else in the record supported that the officer had probable cause or reasonable suspicion to initiate the traffic stop. *Id.* at ¶ 10.

{¶ 20} Like in *Huffman*, we reviewed the video in this case and find that at no point does it show appellant's vehicle crossing over a line or show appellant committing a marked-lanes violation. Appellee, the state of Ohio, points to Bakhsh's testimony that the marked-lanes violation was not recorded on video because appellant was not yet in view of his camera. However, this testimony conflicts with the narrative put forth in the police report, and also conflicts with details the video reveals.

6.

{¶ 21} In the police report, there is a "narrative supplement" in which Bakhsh states: "On 09/23/2017 at approximately 0254 hours I, Ptl. Bakhsh #128 and Ptl. Torbet #129 observed a brown Chevrolet bearing OH plate GXJ4040 travel westbound on US 24, 15 MPH under the speed limit and made a marked lane violation. A traffic stop was initiated * * *[.]"

{¶ 22} Yet at the suppression hearing, Bakhsh testified as follows:

[Bakhsh]: I began to follow the vehicle because they were traveling 35 miles per hour in the speed limit going eastbound and the vehicle proceeded outside the city limits into Toledo which where she pulled into a Sunoco gas station Detroit and the Trail.

[Prosecutor]: And let me stop you real quick. The gas station at Detroit and the Trail, how far outside the city limits is that?

[Bakhsh]: It's right, right at the very border where we actually have to go out to our legal turn around to get back into the city. So, we go through there daily.

[Prosecutor]: What happened next and what did you observe?

[Bakhsh]: With the timeframes of the high risk hours of where impaired drivers are I watched the vehicle pull into the gas station that was closed which I felt was suspicious with the timeframe and also with the driving behavior of her driving, driving under the speed limit I then went to legal turn around which is Ascot Road and –

7.

[Prosecutor]: Let me stop you. Where is Ascot in relationship to the gas station?

[Bakhsh]: It's, it's in view of the gas station. It's not directly across from it, but I could see it from, being on Ascot Road I can see the gas station.

[Prosecutor]: All right. You went to Ascot, what happened next and what did you observe?

[Bakhsh]: I turned into Ascot and I decided to pull into a driveway and turn my vehicle around and, so I could observe the vehicle because I felt the vehicle was suspicious.

[Prosecutor]: All right.

[Bakhsh]: I observed the vehicle pull out of the gas station, head back into Maumee which I felt was odd because the vehicle was driving outside of Maumee then decided to go back into Maumee which normal people would normally not do.

[Prosecutor]: All right. And the vehicle on what roadway, when it left the gas station what roadway did it exit onto?

[Bakhsh]: It exited onto Detroit and went to the very far right lane to proceed onto the Trail, go towards into Maumee again.

[Prosecutor]: All right. Did you see the vehicle exit the gas station onto Detroit?

[Bakhsh]: Yes.

[Prosecutor]: All right. And from that period of time were there any vehicles or anything between your patrol vehicle and [appellant]'s vehicle?

[Bakhsh]: No.

[Prosecutor]: All right. What happened next and what did you observe?

[Bakhsh]: When the vehicle pulled out of the gas station then I pulled out of Ascot Road onto Detroit and started to follow the vehicle. The vehicle had already made the turn onto the Trail. My camera is recording at this time because our cameras record 60 seconds prior to us either initiating a traffic stop or actually manually pressing the button to start recording. The vehicle made the turn onto the Trail and was driving onto the, driving on the Trail and when I made my turn along the curve I could, I looked out my window which would be the passenger window slash windshield, I could see the vehicle off on the berm with the tire, the right tires across the white line and then when my vehicle actually lined up with, with [appellant]'s vehicle where the camera would actually see it the vehicle had already went back onto the roadway and I continued to follow it. And then when I continued to follow it for a short period of time and then the vehicle, the vehicle then went off to the right of the roadway again but did not go all the way over the white line but drove on the white line, that's when I initiated the traffic stop.

{¶ 23} This testimony conflicts with what the police report states because in Bakhsh's narrative supplement he presents a sequence of events from which we infer that appellant was traveling westbound when allegedly traveling slowly and committing the alleged lane violation. Based on Bakhsh's description when testifying, however, we can only infer that appellant was eastbound when allegedly traveling slowly, and turning from southbound to westbound when committing the alleged lane violation.

{¶ 24} The video actually reveals that moment when Bakhsh began pursuing appellant and, based on our review, we find his testimony also conflicts with what the video reveals. Assuming appellant was leaving the closed gas station as the video begins, the footage shows appellant then traveled west across Detroit Ave. ("Detroit") to reach the far right lane facing south, to then turn right at the light onto Anthony Wayne Trail ("the Trail") to travel west. According to Bakhsh's description of the events, he witnessed appellant cross the far-right line at the slight moment she was not in view of his camera (as his patrol car turned onto the Trail from Detroit). A close examination of the video, however, and in particular that precise moment when Bakhsh would have been able to see appellant after her turn onto the Trail, reveals that there was no far right line to cross on either Detroit or the Trail until a second or two before appellant was in view of the camera.

{¶ 25} More specifically, the video we examined was taken from Bakhsh's front-end, and as Bakhsh fully turns onto the Trail, the video shows appellant about eight to ten car lengths ahead. Where her vehicle is seen traveling at that moment is about two to three car lengths ahead of where the marked, far-right lane begins (is first visible on the

10.

Trail). As Bakhsh is turning onto the Trail, appellant is seen clearly traveling perfectly within her lane (about 18 inches to the left of the right line). The video reveals she continued to drive well within her lane until she veered to the right and touched the line as Bakhsh approached her vehicle's rear end, which was the near violation for which Bakhsh stopped her.

{¶ 26} Therefore, we find no competent, credible evidence in the record to support that appellant crossed the line in violation of the marked-lanes law. Furthermore, the additional facts mentioned by Bakhsh, such as appellant's slow speed, stopping at a closed gas station, and traveling on the white line, even if all accurate and true, do not support that appellant operated her vehicle unlawfully. Consequently, and based on the totality of the circumstances, the marked-lanes violation is not supported by competent, credible evidence, and nothing in the record further supports that Bakhsh had probable cause or reasonable, articulable suspicion to initiate the stop of appellant on September 23, 2017.

{¶ 27} Accordingly, we find the court below improperly denied the motion to suppress, and appellant's assigned errors are well-taken.

### Conclusion

{¶ 28} The September 11, 2018 judgment of the Maumee Municipal Court is reversed and remanded for proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                            _____

Thomas J. Osowik, J.                  JUDGE

Christine E. Mayle, P.J.             _____
CONCUR.                                        JUDGE

                                              _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.